[L. A. No. 2265. In Bank.—December 27, 1909.]

## BIG THREE MINING AND MILLING COMPANY (a Corporation), Appellant, v. E. M. HAMILTON et al., Respondents.

MINING CLAIMS—ASSESSMENT WORK UPON ONE OF SEVERAL CLAIMS HELD IN COMMON — GOOD FAITH — TENDENCY TO ·BENEFIT OTHER CLAIMS.—Where mining claims are held in common the expenditures required by section 2324 of the Revised Statutes of the United States. may be made upon any one of the claims; but it is held, however, that the work so done must be done in good faith, and must have a. tendency to benefit the claims other than the one upon which the work is done.

ID.—QUESTION OF FACT FOR JURY.—The question as to whether the doing of sufficient work upon one of several claims held in common is done in good faith and has a tendency to benefit the other claims. is one of fact to be determined by the jury.

ID.—SUPPORT OF FINDING AGAINST BENEFIT—VEINS CROSSING SIDE-LINES. —ANNUAL WORK NOT DONE ON OTHER CLAIMS.—It is held that, notwithstanding conflicting evidence, there was ample evidence to warrant the jury in finding that there was no continuous vein, and that such veins as were found in the claim upon which an amount of work was done equivalent to four claims, passed out of its side-lines, and that work done thereon did not tend to develop the other three claims; and that no sufficient work was done on two of the other claims to hold them as against subsequent locators thereof.

ID.—INSTRUCTION—ASSESSMENT WORK UPON "ADJOINING CLAIMS."—It. is held that an instruction as to assessment work done upon a group of claims adjoining each other, and as to forfeiture thereof for failure to do annual work, which is otherwise correct, was not preju-dicially erroneous when, in view of the language used in a later part of the instruction, the jury were given to understand that work done upon any one of the four claims, which in fact were not ad-joining, could, under proper conditions, be applied to any of the four.

ID.—CLAIMS BENEFITED NEED NOT BE ADJOINING.—The better authority supports the position that assessment work may be done upon one of a group of claims held in common, even though the claims are not all adjoining.

ID.—HARMONY OF INSTRUCTIONS — CHARACTER OF WORK — BURDEN OF PROOF.—An instruction correctly defining the character of the work that may be done upon one claim for the benefit of another owned in common with it, in that work done outside of the one must have a tendency to develop or benefit the other, is not inconsistent with an instruction stated to be in accordance with other instructions given, that the burden of proof is on the defendants to show that the necessary assessment work was not done as required by law upon two of the claims, but that in so far as plaintiff's case depends on work done outside of the claims asserted to be forfeited, the burden of proof is upon the plaintiff to show that such outside work did actually benefit, where it is evident from the other instruction referred to that the jury could not be misled by the omission of the words "tend to" in plaintiff's burden of proof.

ID.—TITLE BY PRESCRIPTION—ADVERSE POSSESSION.—In order to acquire title to a mining claim by prescription, the possession of the property must not only be hostile to the title, but must be exclusive, continuous, and uninterrupted for the full period of five years before the commencement of the action.   Any interruption of the adverse possession within the required five years prevents the acquisition of the title by prescription.

ID.—FINDING AGAINST EVIDENCE—INTERRUPTED POSSESSION.—A finding in favor of a prescriptive title acquired by one of the defendants to one of plaintiff's mining claims is against the evidence, where the testimony to support the same shows that the plaintiff's predecessors went upon the claim from time to time during the five years preceding the commencement of the action, and conducted extensive mining operations thereon, notwithstanding the adverse claimant protested against the same and asserted title in himself, when his protests were unheeded and the work continued.   The evidence that his possession was neither exclusive nor uninterrupted for the requisite period defeats the finding in favor of his prescriptive title.

ID.—EFFECT OF GENERAL VERDICT—FINDING UPON ALL MATERIAL ISSUES —PRIORITY OF LOCATION.—The general verdict in favor of the prevailing party imports findings in favor of the prevailing party upon all material issues, and inasmuch as the prescriptive claimant also pleaded priority of location of his claim, the general verdict imports a finding in favor of his prior location; and where the jury also especially found in favor of his prior location, if such finding is sustained by evidence and unaffected by error, the finding on the other defense or any errors in regard to it could not have been prejudicial.

ID.—LOCATIONS MADE UNDER ACT OF 1897—EFFECT OF REPEAL—PROPER INSTRUCTION.—Where neither the locations of the plaintiff nor the

conflicting locations of the defendant, which were made while the act of 1897 was in force, conformed thereto, the court properly instructed the jury that "mining locations made while the act of 1897 was in force, but invalid by reason of non-compliance with the provisions of that law, will be valid after the repeal of that law providing the provisions of the mining laws of the United States had been complied with and there were no intervening rights before the repeal of that law, and where the claim had been occupied, held, and worked up to the time of and after such repeal."

ID.—EVIDENCE — DEFENDANT'S PRIOR LOCATIONS — WORK — EXTENT OF POSSESSION.—Where the evidence for the defendant showed prior locations of three .claims, including one of plaintiff's claims, and his prosecution of work for their development continuously up to and after the repeal of the act of 1897, and that part of such work was done within the boundaries of the plaintiff's subsequent claim, this evidence, notwithstanding conflicting evidence to the contrary, was sufficient to show possession of the entire claim of defendant to the extent of the visible boundaries thereof.

ID.—FAILURE TO RECORD PRIOR CLAIM IN TWENTY DAYS—INVALID ENTRY AND LOCATION BY PLAINTIFF.—Notwithstanding the failure of a defendant to record his prior locations within twenty days, under the statute, the plaintiff's predecessors had no right, within such twenty days, to enter upon the defendant's prior claims and make a location thereof. An entry upon appropriated mineral lands confers no right to a valid location.

ID.—EVIDENCE—PAYMENT FOR ASSESSMENT WORK NOT MATERIAL.—Whether or not the assessment work done on a claim was actually paid for is immaterial and entitled to no weight.

ID.—ERECTION OF MILL ON CLAIM—RELEVANT EVIDENCE—GOOD FAITH.—Evidence was admissible on the question of good faith to show that the expenditure for a mill erected on a claim was of no value for reducing the ore there found.

ID.—AFFIDAVITS OF LABOR—PRIMA FACIE EVIDENCE—EXCLUSION NOT PREJUDICIAL—INDEPENDENT PROOF.—Affidavits of labor duly recorded are *prima facie* evidence, and should have been admitted. But where the persons making them gave independent proof of the same labor done, no substantial injury could result from their exclusion.

EVIDENCE—PRIOR LOCATION BY DEFENDANT OF MERE PLACER CLAIMS—IMPEACHMENT OF WITNESS BY STATEMENT—FOUNDATION NOT LAID.—Where a witness for plaintiff testified that defendant's prior location was of mere placer claims, and that his subsequent quartz location was bounded on the south by plaintiff's quartz claims, such evidence, if true, would prove the paramount rights of plaintiff. *Held*, that it was prejudicial error to allow the impeachment of such witness by contrary statements for which no foundation was laid on his cross-examination.

APPEAL from an order of the Superior Court of Los Angeles County denying a motion for new trial. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

J. W. P. Laird, Wm. Chambers, and William J. Hunsaker, for Appellant.

Sherman Page, and Roger S. Page, for Respondents.

SLOSS, J.—The action was brought to quiet plaintiff's title to four quartz mining claims, the "Occidental," the "Rosamond," the "Kid," and the "Home No. 1," together with the "Big Three Millsite." There is no dispute as to plaintiff's ownership of the Home No. 1, and all controversies relating to the ownership of the millsite were settled by agreement of the parties before the trial. The questions presented upon this appeal relate entirely to the three claims first mentioned, the Occidental, the Rosamond, and the Kid. As claimed by plaintiff, these three, together with the Home No. 1, ran along an easterly and westerly line, end to end. The Occidental lay to the west; adjoining it on the east was the Rosamond; next came the Kid, and adjoining the Kid to the east lay the Home No. 1. Each of the claims, except the Kid, was of the full size permitted by the United States statutes, to wit, fifteen hundred feet in length by six hundred feet in width, or thereabouts. The Kid was a smaller or fractional claim, occupying the space left between the Rosamond and the Home, its end-lines constituting the easterly and westerly ends, respectively, of the claims last named. The north line of the Kid, according to plaintiff's testimony, is sixty-four feet in length and the south line eighty-seven feet eight inches.

The allegations of plaintiff's complaint as to the ownership and possession of these claims were denied by the defendants. In addition separate defenses were set up whereby title to various portions of the property claimed by plaintiff was asserted by different defendants. The defendant, E. M. Hamilton, claimed ownership of substantially all of the Rosamond claim, in part by virtue of his prior location of a claim also designated the Rosamond (hereinafter referred to as the "Hamilton Rosamond"), and in part by reason of his location

of two overlapping claims known as the Fay No. 1 and the Lida. The Rosamond, as claimed by this defendant, covered the greater part of plaintiff's Rosamond. The north lines of the two are very nearly identical. The east end-line of Hamilton's Rosamond is 542 feet in length, while the west end-line is 344.75 feet long. The Fay No. 1 is located to the south of Hamilton's Rosamond and overlaps plaintiff's Rosamond to the extent of five and one-fourth acres, being nearly all of that portion of plaintiff's Rosamond lying south of the Hamilton Rosamond. The Lida lies to the north and east of both Rosamond claims and overlaps them at their northeasterly corners to the extent of something over three acres. Said Lida claim overlaps the Kid as claimed by plaintiff to the extent of sixty-four one hundredths of an acre. It should here be said that these statements regarding the location and extent of the Fay No. 1, the Lida, and the Hamilton Rosamond are disputed by appellant, which denies not only the fact of location of these claims, but contends that the Fay and the Lida, if located, did not cover any part of the Rosamond.

Title to plaintiff's Rosamond is also claimed by Hamilton by virtue of adverse possession for the statutory period.

Title to the Occidental and Kid mining claims are asserted by various defendants by virtue of relocations made by them following an alleged forfeiture of said claims by plaintiff for failure to do the annual assessment work. The Occidental is claimed by E. M. Hamilton and J. Frank Walters, each asserting ownership to an undivided one-half interest. The Kid is claimed in like manner by D. M. Reck and Roger S. Page.

The case was tried before a jury which, after hearing a considerable mass of testimony, much of it conflicting, returned a verdict as follows: "1. With respect to plaintiff's claim of ownership of the Occidental Mining Claim, we find in favor of defendants. 2. With respect to plaintiff's claim of ownership of the Rosamond Mining Claim, we find in favor of defendants. 3. With respect to plaintiff's claim of ownership of the Kid Mining Claim, we find in favor of the defendants." In addition the jury made answer to nine special issues. We shall have occasion to refer to some of these later.

Before taking up the issues arising with reference to the Rosamond, it will be convenient to consider separately the questions relating to the claims of title made to the Occidental

and the Kid by virtue of relocations. The Occidental is claimed by Hamilton and Walters under a location made by them on the first day of January, 1905; the Kid by Page and Reck on a location made on the fifth day of March, 1904. The questions presented to the jury with reference to these claims were whether the Occidental had been forfeited by plaintiff by its failure to do the necessary work on said claim during the year 1904, and whether the Kid had been so forfeited by failure to do such work during 1903. On these points the jury found in answer to the special issues submitted to them as follows: "What was the value of the work and improvements done on the Occidental Mining Claim during the year 1904? Answer. Thirty-five dollars." "What was the value of the work and improvements done on the Kid Mining Claim during the year 1903? Answer. Thirty-five dollars." There can be no question that the findings are fully sustained by the evidence in so far as such evidence related to the work done within the boundaries of the respective claims. A number of witnesses who had first shown their familiarity with the work done and their ability to estimate its value, testified that the amount of work done on the claims in the years in question did not exceed the sums found by the jury.

It is claimed, however, by the appellant that, during the year 1904, plaintiff was the owner, not only of the Occidental and Kid claims, but also of the Home No. 1, and that it did work and placed improvements upon this claim to an amount in excess of that necessary to hold all three claims. Where claims are held in common the expenditure required by the laws of the United States may be made upon any one of the claims. (U. S. Rev. Stats., sec. 2324, [U. S. Comp. Stats. 1901, p. 1426].) The work so done, however, must be done in good faith for the benefit of all the claims and it must be such as to have a tendency to benefit or develop the claims other than the one upon which the work is done. Whether it is so done or has such tendency is a question of fact, (Snyder on Mines, sec. 482; *Chambers* v. *Harrington,* 111 U. S. 350, [4 Sup. Ct. 428]; *Jackson* v. *Roby,* 109 U. S. 440, [3 Sup. Ct. 301]; *DeNoon* v. *Morrison,* 83 Cal. 163, [23 Pac. 374]; *Mt. Diablo M. &M. Co.* v. *Callison,* 5 Sawy. 439, [Fed. Cas. No. 9886]; *Book* v. *Justice Mining Co.,* 58 Fed. 106; *Hall* v. *Kearney,* 18 Colo. 505, [33 Pac. 373]), and this question was

submitted to the jury in the case at bar. The evidence was such as to fully warrant the jury in finding that the work done on the Home No. 1 was not done for the purpose of developing the Kid or the Occidental and that such work had no tendency to develop either of them. The appellant offered some testimony in support of its theory that the four claims to which it asserted title were located upon the line of a vein running east and west; that this vein could be traced continuously through the four claims and that a reasonable and proper mode of developing each of the claims was to enter the vein within the limits of Home No. 1 and thence drift, along the vein, through the Kid, Rosamond, and the Occidental, with a view to taking all of the ore extracted back to the Home, upon which reduction works had been placed. But as against this there was an abundance of testimony on behalf of the respondents to the effect that there was no such continuous vein, but that, on the contrary, the country was much broken up; that all veins which were discoverable ran from the northeast to the southwest or from the northwest to the southeast; and that such of them as were to be found within the limits of the Home No. 1 passed out of the side-lines of that claim without entering either the Kid, the Rosamond, or the Occidental.

But, apart from the question of sufficiency of evidence, it is contended that the court erred in its instructions to the jury regarding the matter of forfeiture by failure to do the annual work. One instruction (numbered 6) reads as follows: "You are instructed that the laws of the United States require one hundred dollars' worth of work or of improvements annually to be performed or made on a mining claim. Such work or improvements so required by the laws of the United States may be done or made within the boundaries of such claim or such work may be done outside the boundaries of such claim on one of a group of claims adjoining each other and owned by the same party, if done in pursuance of a system of development and if the same has a tendency to benefit or develop each claim in the group. Work done on one of a group of mining claims which has a tendency to develop or benefit all of the claims in the said group inures to the benefit of each and all of said claims, even though the system adopted may not be the best that could have been devised under the circumstances. Improvements made, such as the construction of roads, mills,

or mining machinery for the working and operation of an entire group owned by one party, and which said improvements tend to the benefit of all of the claims in said group will inure to the benefit of each and all of the claims in said group, even though such improvements be made outside the lines of any of said claims. If you believe that in the year 1904 there was more than $400 worth of work done within the boundaries of Home No. 1 Mining Claim by the plaintiff in this case, or any one acting under the plaintiff, and with the plaintiff's consent, and that such work was done in pursuance of a system that tended to the development of all of the claims claimed by the plaintiff herein in its complaint, and tended to the development and benefit of all such claims, then the work so performed was sufficient to prevent a forfeiture of any of said claims on account of the annual labor or improvement requirements of the year 1904. You are further instructed that even though the work done on said Home No. 1 claim in 1904 was not of the value of $400, still if you believe from the evidence that improvements were made consisting of a mill, cyanide tanks and waterworks of as great a value as $400 which taken in connection with such work as you find to have been done on the claim under such conditions as those above stated, would equal or exceed the sum of $400 and that such improvements were of such a character and so constructed as to benefit and tend to the development of all of said four claims, and each of them, then the court instructs you that upon those facts existing there was no forfeiture of such claims, or either of them on account of the said annual labor or improvement requirements. It is not necessary that a party in doing work on a claim or on a system for the benefit of all claims held by such party and contiguous to each other shall do the same specifically as annual labor or assessment work, but if such work is done in good faith and is equal in amount to the work required to be done by the act of Congress then the same will be sufficient to prevent a forfeiture." One criticism of this instruction is that the court speaks of work done outside the boundaries of a claim as required to be done on one of a group of claims "adjoining each other." Undoubtedly, the better authority supports the contention that assessment work may be done upon one of a group of claims owned in common, even though the claims are not all adjoin-

ing.    (1 Snyder on Mines, p. 444; *Altoona Q. M. Co.* v.
*Integral Q. M. Co.*, 114 Cal. 100, [45 Pac. 1047].) · Accord-
ingly, it is claimed that in this case, inasmuch as the jury
found that the plaintiff was not the owner of the Rosamond,
it must have concluded from the instruction of the court that
it could not consider work done on the Home in connection
with the Occidental since the Occidental was, according to the
verdict, not adjoining other claims owned by plaintiff.    We
think, however, that in view of the language used by the
court in a later part of the same instruction the inaccurate
expression first used could not have influenced the jury to
plaintiff's detriment.    The court specifically instructed the
jury that if the requisite work was done upon the Home and
such work was done "in pursuance of a system that tended to
a development of *all the claims claimed by the plaintiff herein
in its complaint*," such work was sufficient to prevent a for-
feiture of any of such claims.    In view of this language it is
clear that the court had reference to plaintiff's assertion of
title to the four claims rather than to the validity of that title,
and that it instructed the jury that work done upon any one
of such four claims (which were in fact adjoining), could,
under proper conditions, be applied to any one of the four.
No prejudice could have resulted from the instruction, limited
as it thus was.

It is not disputed that instruction 6 correctly defines the
character of the work that may be done upon one claim for
the development of another owned in common with it.    It
states that work done outside the limits of a claim must be
such as has a tendency to develop or benefit the claim.    It is
argued, however, that a subsequent instruction is in conflict
with it.    Instruction No. 30 reads as follows:    "In ac-
cordance with instructions heretofore given, the burden
of proof is on the defendants to show that the neces-
sary assessment work was not done as required by law
on the Occidental claim for the year 1904, and on the Kid
claim for the year 1903, but in so far as the plaintiff's case
is made to depend upon work done outside of the Occidental
and Kid during said years 1903 and 1904 the burden of proof
is on the plaintiff to show that such work done outside of said
claims did actually benefit said claims."    This instruction is
assailed upon the ground that it requires the plaintiff to show

that work done outside of the claim *actually benefited* the claim, whereas the true rule is the one stated in the prior instruction that it need only *tend to its benefit*. We need not here enter into any extended discussion of the distinction, if there be any, between the words "actually benefited" the claim and "tend to benefit" the claim. It would seem that a greater burden is imposed upon a party if he be required to show that his work actually benefited the claim than if he be merely called upon to establish that it had a tendency in that direction. But under the familiar rule that the instructions of the court are to be read together and harmonized, if possible, we think there is no conflict between instruction 30 and the earlier one above quoted. The first instruction was intended to define to the jury in specific terms the tests by which they were to determine whether work done outside of the claim could be counted as annual work sufficient to hold it. The rule was set out at considerable length and with clearness. The declaration that the work must merely have a tendency to benefit or develop the claim is found at least six times in this instruction. Instruction 30, the one complained of, is one dealing, not with the question of the character of proof that must be made in such cases, but purely with the burden of proof. At its very beginning it is qualified with the words "in accordance with instructions heretofore given" and then goes on to define that in one state of circumstances the burden of proof is upon the plaintiff and in the other upon the defendants. But in either case such burden is sustained by making proof in accordance with instructions theretofore given. We do not think the jury could have been misled by the omission of the words "tend to."

One further point is made with regard to the instructions on the matter of forfeiture. In instruction 9 the court told the jury that "the law requires clear and convincing evidence to support the forfeiture" of a claim duly located and worked in good faith. It then stated that "if the evidence does not satisfy you by a clear preponderance thereof that the plaintiff failed to perform the necessary work, then it follows that the plaintiff did not forfeit the said claim." We are unable to see any error in this. While it is often said that a forfeiture can be shown only upon clear and convincing evidence, "the proof is made as required whenever it is shown by a pre-

ponderance of the evidence that the full amount of annual labor or improvements was not made or expended within a given year." (Snyder on Mines, sec. 726.) See further, to the effect that a preponderance of the evidence is all that is required to establish a fact necessary to be shown in a civil action, section 2061 of the Code of Civil Procedure; *Ford* v. *Chambers*, 19 Cal. 143; *Murphy* v. *Waterhouse*, 113 Cal. 467, [54 Am. St. Rep. 365, 45 Pac. 866].

The foregoing discussion is directed to the contention that work done on the Home No. 1 in 1904 was applicable to the Occidental. It is not necessary to make any additional answer to the point that work done on the Occidental in 1903 was sufficient to prevent a forfeiture of the Kid.

As has been stated, the claim of Hamilton to the ownership of the Rosamond mine rests upon different grounds from those heretofore considered. He asserts title to this property by virtue, first, of adverse possession; second, of locations of three mining claims, the Fay No. 1, the Hamilton Rosamond, and the Lida, covering the territory of plaintiff's Rosamond. We are satisfied that the evidence is insufficient to support the finding that Hamilton had acquired title to this claim by adverse possession. To acquire title by prescription the possession of the property must not only be hostile to plaintiff's title, but must be exclusive, continuous, and uninterrupted for a period of five years prior to the commencement of the action. (*San Francisco* v. *Field*, 37 Cal. 349, [99 Am. Dec. 278]; *Unger* v. *Mooney*, 63 Cal. 586, [49 Am. Rep. 100].) Any interruption of the adverse possession within the required five years prevents the acquisition of the title by prescription. (*Cave* v. *Crafts*, 53 Cal. 136; *Thomas* v. *England*, 71 Cal. 456, [12 Pac. 491]; *Bree* v. *Wheeler*, 129 Cal. 145, [61 Pac. 782]; *Hamilton* v. *Southern Nev. G. & M. Co.*, 33 Fed. 562.)

It is shown by the testimony of the respondents themselves that the predecessors in interest of plaintiff went upon the Rosamond claim from time to time during the five years preceding the commencement of the action and conducted quite extensive mining operations there. While Hamilton protested against their presence upon the claim and asserted title in himself, his protests were not heeded and the work continued. It is clear that Hamilton's possession was neither exclusive nor uninterrupted for the period required by statute to vest title in him.

Inasmuch as a general verdict imports findings in favor of the prevailing party upon all material issues, we must assume that the jury found in favor of Hamilton on his claim under prior locations, as well as his plea of title by prescription. In fact, in answer to a special issue, the jury found specifically that the first location on the Rosamond was made by Hamilton on October 26, 1897. Either defense was sufficient in law to entitle the defendant Hamilton to judgment. If, then, either was sustained by the evidence and was not affected by any error, the want of evidence to sustain the finding on the other defense or any errors committed in regard to it could not have been prejudicial. (*Crosett* v. *Whelan*, 44 Cal. 200; *Verdelli* v. *Gray's Harbor Commercial Co.*, 115 Cal. 517, [47 Pac. 364, 778].)

The facts shown with reference to the locations of the various claims covering the ground included in plaintiff's Rosamond are as follows: Plaintiff offered evidence tending to show that on the sixth day of November, 1897, Charles A. Graves and E. C. Johnson, plaintiff's predecessors in interest, located plaintiff's Rosamond by posting thereon a notice which was thereafter recorded and by distinctly marking the claim on the ground so that its boundaries could be readily traced. There was also evidence tending to show that the locators and their successors in interest had thereafter continuously done work upon the claim. On the other hand, the defendants offered evidence sufficient to justify the jury in finding that Hamilton had at a prior date, to wit, on the twenty-sixth day of October, 1897, taken steps to locate the claims hereinbefore described under the names of the Lida, the Fay No. 1, and the Hamilton Rosamond by posting notices of location upon said claims and distinctly marking the boundaries thereof after discovering upon each of said claims mineral-bearing quartz in place. There is also evidence sufficient to show that after taking these steps Hamilton had continuously, up to the time of the commencement of the action, prosecuted work upon each of the locations. There had not been on his part a compliance with all of the requirements of the statute of 1897 prescribing the manner of locating mineral claims (Stats. 1897, p. 214), nor for that matter, had plaintiff's predecessors in interest complied with the requirements of that statute. Under these circumstances the court instructed the jury that

"mining locations made while the law of 1897 was in force, but invalid by reason of non-compliance with the provisions of that law will be valid after the repeal of that law providing the provisions of the mining laws of the United States have been complied with and there are no intervening rights before the repeal of that law, and provided further that the claim has been occupied, held, and worked up to the time of and after such repeal." This instruction was in accord with the rules laid down by this court in *Dwinnell* v. *Dyer*, 145 Cal. 12, [78 Pac. 247]. In that case it was held that a locator, entering upon unappropriated land of the United States while the act of 1897 was in force and performing all acts necessary to constitute a valid location under the laws of the United States and remaining in possession and working the claim until the repeal of the state statute (in 1899 or 1900), acquired upon the repeal of the state statute the rights incident to a valid location, notwithstanding his failure to comply with the requirements of the state law. Such was the situation of the defendant Dyer in the case cited, and there was sufficient evidence in the case at bar to justify the jury in finding that Hamilton occupied the same position with reference to the claim here in dispute. The evidence regarding Hamilton's possession of the Rosamond claim was, to be sure, sharply conflicting, but he did introduce testimony tending to show that he had continuously, up to and after the repeal of the law of 1897, prosecuted work under a system tending to the development of all three claims and that a part of this work had been done within the boundaries of the Rosamond itself. This was enough to constitute possession of the entire claim to the extent of the visible boundaries. ·(*English* v. *Johnson*, 17 Cal. 107, [76 Am. Dec. 574]; *Dwinnell* v. *Dyer*, 145 Cal. 12, [78 Pac. 247].) The court did not err in instructing the jury, in effect, that if Hamilton had on October 26, 1897, erected the first or initial monument at the place required by the state law and posted the required notices thereon and remained in possession of the claim, no other person could make a valid entry thereon for the purpose of making another location until Hamilton was in default. Under the state law the notice of location was required to be recorded in the office of the county recorder within twenty days after the posting thereof. Without passing upon the

question whether the failure to record the notice within the required time worked a forfeiture (see sec. 6 of act of 1897), it must certainly be held that within the twenty days allowed for recordation, the claim of the locator is valid and no other entry can be made as the foundation or basis of a claim of title. This is the purport and effect of the instruction complained of. Assuming, as we must upon this appeal, that the jury found all controverted questions of fact in favor of the defendants, there is no basis for the claim that the doctrine of *Dwinnell* v. *Dyer* protects the plaintiff in its claim. The jury having found that Hamilton took the preliminary steps required to effect a valid location and that he remained thereafter in possession of the claim, the predecessors of the plaintiff, in attempting to locate the same land within the twenty days allowed to Hamilton for recordation, were entering upon appropriated public lands in the possession of another. Such entry, as is well settled, confers no right to a valid location. (*Belk* v. *Meagher*, 104 U. S. 279.)

Various rulings of the court in admitting and rejecting evidence are assigned as error. We think that none of these affecting the issues concerning the ownership of the Occidental and the Kid claims were of sufficient consequence to justify a reversal. The witness Cochrane, one of the directors of the plaintiff, was asked on cross-examination whether the plaintiff paid for the assessment work that was done on the claims in 1904 by the Dry Process Company, which held under a contract with plaintiff. Over the objection of the plaintiff that the question was immaterial and irrelevant, he was permitted to answer that the plaintiff did not pay for such work. Whether or not the work was actually paid for was a fact. entitled to no weight (Snyder on Mines, sec. 492). But the error in overruling the objection could not have harmed the appellant inasmuch as the court instructed the jury that whatever work was done by the Dry Process Company in the year 1904 in connection with any of the mining claims claimed by plaintiff inured to the benefit of the plaintiff. It was proper to allow the same witness to testify that the mill which had been put up on the Home No. 1 by the Dry Process Company was of no value for the purpose of reducing the ore there found. This had a bearing upon the question of the good faith of the parties in making the expenditure, and their good.

faith was a matter proper to be considered by the jury in determining what amount of money had been expended in the development and working of the claims.

The court should have permitted the introduction of affidavits or proofs of labor made by the witnesses Cochrane and Donovan and duly recorded. Such proofs are by statute made *prima facie* evidence of the facts therein stated (Stats. 1891, p. 219), but inasmuch as both Cochrane and Donovan had testified fully and in detail to all of the material facts stated in their respective affidavits no substantial injury could have resulted from the exclusion of their written declarations.

A more serious point arises in connection with the admission of evidence bearing upon the issues as to the locations of the Rosamond, the Lida, and the Fay. N. V. Gray, a witness for plaintiff, gave testimony tending to show that none of the locations claimed by Hamilton had actually been made as locations of quartz claims prior to November 8, 1897; but that all claims located by Hamilton theretofore had been located as placer claims. He further testified that at that time Hamilton had not located the Rosamond as claimed by him and that the Lida when located by Hamilton as a quartz claim was bounded on the south by plaintiff's Rosamond already located by plaintiff's predecessor in interest, Charles A. Graves. This testimony, if true, established clearly that Graves and not Hamilton was prior in time in the location of the Rosamond, and that he and his successors, if remaining in possession and working the claim until the time of the repeal of the state law, were entitled to hold the same under the rule declared in *Dwinnell* v. *Dyer*. The defendants undertook to impeach Gray by proof of contrary statements made by him to one Moffett. With a view to such impeachment Graves was asked upon cross-examination whether or not he had made certain statements to Moffett. The questions did not specify, as required by section 2052 of the Code of Civil Procedure, the time and place of the alleged conversations or the persons present thereat. Objection was duly made upon the ground that the proper foundation had not been laid. This objection was, however, overruled and the witness answered denying the alleged statements. The substance of the matter alleged to have been stated by Gray to Moffett was that Graves had admitted to Hamilton that in locating the Rosamond he had located upon a claim belonging

to Hamilton and that he would take his papers off the claim, which he did. Moffett was subsequently called and was permitted over the objection of the plaintiff that no proper foundation had been laid for contradicting Gray in that regard, to testify that Gray had made the statements as claimed by defendants. This was error (*Birch* v. *Hale*, 99 Cal. 299, [33 Pac. 1088]), and error that cannot be regarded as without prejudice to plaintiff. The statement by Gray that Graves had, at the time of the transaction, admitted locating his Rosamond claim upon ground already owned by Hamilton had a strong tendency to throw discredit upon the testimony of Gray that Hamilton had never made any location of the Rosamond ground prior to Graves's location. But beyond all this, Moffett was permitted to testify over the same objection, i. e. that no foundation had been laid, to statements made by Gray which had not in any way been called to the attention of the latter upon his cross-examination. One of these statements was to the effect that Hamilton had arrived at the mines one day ahead of Graves and placed his papers on the claim. This testimony clearly should not have been admitted. It is impossible to determine what effect it may have had on the jury, in leading it to its answer on the very material issue of priority in the location of the claims.

These errors, together with the insufficiency of the evidence to sustain the finding of title by prescription, will necessitate a new trial of the issues affecting the Rosamond.

The order denying a new trial is reversed as to the issues affecting the Rosamond (as claimed by plaintiff), and in all other respects it is affirmed.

The appellant shall recover costs of this appeal against the respondent E. M. Hamilton, the amount of such costs to include the clerk's fee for filing transcript, together with such part of the cost of printing transcript as may by the trial court be fixed as the just proportion thereof made necessary by the issues hereby remanded for a new trial.

Shaw, J., Angellotti, J., Melvin, J., Henshaw, J., and Lorigan, J., concurred.

Rehearing denied.