[Civ. No. 6122. Third Appellate District.—June 30, 1939.]

CATHERINE ANN HOFFART et al., Plaintiffs and Appellants, v. SOUTHERN PACIFIC COMPANY (a Corporation), Defendant and Respondent; JOHN HONIG, Defendant and Appellant.

592

Archibald D. McDougall and C. C. McDonald for Plaintiffs and Appellants.

Butler, Van Dyke & Harris and Gilford G. Rowland for Defendant and Appellant.

Armfield & Eddy, Elmer W. Armfield and Arthur B. Eddy for Defendant and Respondent.

TUTTLE, J.—This is an action brought by plaintiffs to recover damages arising out of injuries which resulted in the death of Melchoir V. Hoffart. Defendant Honig filed a cross-complaint to recover damages from the Southern Pacific Company, arising out of the same accident, and as to this cause of action, a nonsuit was granted. The jury denied damages as to defendant Southern Pacific Company, but awarded plaintiffs the sum of $4,486.25 against defendant John Honig. A new trial was granted as to defendant Honig, on the sole issue of damages. The latter now appeals from the judgment on nonsuit entered against him on his cross-complaint, and from the order granting the motion for new trial. Plaintiffs appeal from the judgment in favor of the Southern Pacific Company.

On February 12, 1937, a collision between a train and a truck took place at a railroad crossing located approximately one-half mile northwest of the town of Yolo, in Yolo County. Melchoir V. Hoffart, on account of whose death the action was brought, was riding in the truck driven and owned by defendant John Honig, which, while being operated in a general southerly direction on a county road known as the old Yolo-Zamora Highway, was struck by a train of defendant Southern Pacific Company. The complaint joined the truck driver John Honig and Southern Pacific Company as defendants, and charged both of these defendants with negligence in their respective operation of the truck and train. In the complaint it was alleged that the deceased was riding in the truck as a passenger. Subsequent to the filing of the complaint, and after the deposition of defendant Honig was taken, plaintiffs obtained leave to file an amendment to the complaint, directed against defendant John Honig, alone, and charging him with wilful misconduct in the operation of his truck at the time of the accident.

Taking up first, the appeal of plaintiffs from that portion of the judgment which denies them a recovery against defendant Southern Pacific Company, it is based solely upon alleged error in giving, modifying and refusing instructions.

It should be borne in mind that in discussing these instructions we are considering an attack by the surviving heirs

of the deceased guest or passenger, and the law pertaining to the duty of a guest or passenger under the circumstances. In this connection a further reference to the facts and the evidence may serve as a background for a more intelligent view of the legal questions which arise. The two men were seated in the cab of the truck, and were driving along a county road which runs southerly in a straight line, intersecting the track at an angle of forty degrees. The train was approaching from the north, so that both train and truck were converging upon the crossing, southward bound. The view of the track in the direction in which the train approached was absolutely unobstructed for at least one thousand feet. The deceased was sitting on the side of the cab next to the track. The windows and windshield of the truck were clear. The time of the accident was 10:45 in the morning. There is a slight incline approaching the grade crossing. Driver Honig gives the following explanation of the accident: He knew that the tracks were there; the visibility was good; his truck was equipped with four-wheel brakes, in good condition. When the truck was about three hundred feet from the crossing they both stopped talking and were "looking for a train", and witness did that continuously until he reached the crossing; the deceased was also looking in both directions at a point one hundred fifty feet from the crossing, (quoting from the record):

"When I was about three hundred feet from the rail I started to look around for the train, because I was approaching a track and, of course, we were talking until that time and, when I was looking around, of course, *the conversation stopped just like that, because I was not paying any attention; I was looking around and he started to look around at the same time.*

"Mr. Eddy. Just a minute. When you say 'he', do you mean Hoffart? A. I mean Hoffart, of course. . . . And I would look around and he would be looking at the same time, to my right, and I would rare forward to see past him, and I also done it at *one hundred feet from the rail* leaning still further forward and, about fifteen feet from the track, I started to shift into second and looked across and then, when I looked again, while I was going up, I looked again and then it was too late, the train was right on top of us. Now, that is as near as I can tell you. . . .

"Q. Then, was it because you were locked up in the cab that you could not see this railroad track; is that the fact? A. That is about what it would be; I could not see it. Q. In other words, it was your own cab that was interfering with your vision, is that correct? A. Yes, and that party that was sitting next to me. *Q. But if you had gotten out of the cab; if you had stopped your car and gotten out of the cab, you would not have had any trouble looking up that railroad track for a mile or two? A. Oh, no, not that way.*"

As he was going toward the crossing and up the slight incline, the truck was moving about five miles per hour, and could have been stopped within twenty feet of the tracks. Witness testified that he did not see the train approaching. The deceased gave no outward sign which would indicate that he saw the train. He made no remonstrance, nor did he say anything to the driver to the effect that a train was approaching. During the last three hundred feet traveled by the truck, neither spoke to the other; both were engaged in looking for an approaching train.

Several instructions were given relating to the duty of a person approaching a railroad crossing in a vehicle. It is not contended that these instructions incorrectly state the law. Appellants contend, however, that they were correct as to the *driver* of such vehicle only, and that the jury must of necessity have understood them to apply to *both* driver and the deceased, who was riding with him in the same seat, but who had no control over the operation of the truck. It is no doubt the rule that "a guest, when not having any control, supervision, or management over the automobile, is not placed in the same legal situation as the driver." (*Switzler* v. *Atchison etc. Ry. Co.*, 104 Cal. App. 138–144 [285 Pac. 918]), and that "the duty imposed upon a guest riding with another is not the same as that required of the driver". (*Scherer* v. *Southern Pac. Co.*, 140 Cal. App. 528–534 [35 Pac. (2d) 356].) We are of the opinion, however, that the only reasonable construction which might be placed upon these instructions would be that they refer to the driver alone, and not to the guest. One refers to the duty of a person "about to *drive* over a railroad crossing". Certainly that does not refer to a *guest*, and could not be reasonably so understood. The other two in question refer to a "person approaching" a railroad crossing, and "a person about to pass over such crossing". The language of the last two

mentioned is not as definite as that in the first, but when the instructions are considered as a whole, it is clear that they would be reasonably construed as applicable to the driver alone. For instance, the trial court specifically instructed the jury upon the duty of a guest or passenger under the circumstances:

"It is the law in this State that the negligence of a driver of an automobile is not imputable to a passenger or guest riding with him. Whether a passenger or guest has or has not exercised ordinary care for his own safety in a particular instance is a question of fact for the jury to determine from the evidence. A passenger or guest of a driver of an automobile is not required, as a matter of law under all circumstances, to watch the road and the driver, and hold himself in readiness to give warnings and directions to the driver concerning the dangers of the road. However, such passenger or guest is normally bound to protest against obvious negligence or recklessness of the driver if he had the opportunity to do so, but the extent of his duty in that regard depends upon the particular circumstances in each case. He is bound to exercise ordinary care for his own safety. A person riding in an automobile as a passenger or guest has a right to assume, until the contrary reasonably appears, that the automobile driver will drive in a proper manner and will take the necessary precautions to safeguard the life of his passenger or guest."

We cannot agree with the statement of appellants and plaintiffs to the effect that the court gave no instructions which distinguished between the duty of a *driver* and the duty of a *guest*. The last two instructions very clearly set forth the duty of a guest. It is true that the difference might have been further accentuated by the instructions proposed by appellants, but we cannot see how the jury was confused or misled after the instructions are all read together. Furthermore, it was clearly pointed out to the jury that: "It is the law of this State that the negligence of a driver of an automobile is not imputable to a passenger or guest riding with him." The three instructions under attack called for the performance of some act upon the part of the person *actually operating the vehicle,* and to hold that they were equally applicable to a guest or passenger would be placing a very strained and unreasonable construction upon them.

Adding to this the view of the instructions as a whole, we can find no prejudice resulting.

The following instruction was given:

"A person about to cross over such crossing cannot rely upon the assumption that the employees operating a train on the track will give the proper warning of approach by sounding the bell and blowing the whistle."

Appellants contend that the foregoing instruction is erroneous, in that the rule applies only where the person about to cross the track is *himself* negligent, and they also predicate error upon the refusal of the court to give an instruction to the effect that one *free from negligence,* in approaching a railroad crossing, *has a right to anticipate* that the law requiring the ringing of a bell and the sounding of a whistle would be complied with. The instruction given correctly stated the law, and the proposed instruction was properly rejected. As stated in *Hutson* v. *Southern California Ry. Co.,* 150 Cal. 701–703 [89 Pac. 1093]: *"It is not the law of this State that a person approaching a railroad crossing is authorized to assume that the persons operating a train will not in any way be negligent in its operation."*

The court gave the following portion of one of plaintiffs' proposed instructions:

"A passenger or guest of a driver of an automobile is not required, as a matter of law under all circumstances, to watch the road and the driver and hold himself in readiness to give warnings and directions to the driver concerning the dangers of the road."

The court qualified this instruction, however, by adding thereto the following:

"However, such passenger or guest is normally bound to protest against obvious negligence or recklessness of the driver if he has the opportunity to do so, but the extent of his duty in that regard depends upon the particular circumstances in each case. He is bound to exercise ordinary care for his own safety."

Appellants contend that this is a proper statement of the law, but that the instruction has no support in the evidence, in that there is no proof that deceased was *conscious of impending danger.* (Citing *Marchetti* v. *Southern Pac. Co.,* 204 Cal. 679 [269 Pac. 529].) We believe that this question has been fully answered, adversely to plaintiffs. There is evidence from which the jury could reasonably infer that

the deceased was conscious of impending danger. For three hundred feet, and while the truck was going at a very moderate speed, he looked continually up the track in the direction from which the train was approaching, with an absolutely unobstructed view. He was seated on the side of the truck next to the track. Having looked, under such circumstances, he will be charged with having seen. (*Parker* v. *Southern Pac. Co.*, 204 Cal. 609 [269 Pac. 622].) There is evidence that the bell of the locomotive was ringing and the whistle blowing some seven hundred feet from the crossing. The last seventy feet traversed by the truck were not parallel to the track, but at a considerable angle—forty degrees. The train was approaching from his side of the truck. The cases cited by appellants upon this question can be distinguished upon the facts, and as stated in *Wagner* v. *Atchison etc. Ry. Co.*, 210 Cal. 526–528 [292 Pac. 645], referring to a guest: "The extent of his duty depends upon the particular circumstances of each case, and is a question for the jury."

▌ Finally, instructions were rejected by the court relating to "after acquired knowledge", and directing the jury to disregard such evidence in respect to the conduct of *deceased*. The court gave an instruction confining the scope of the evidence to the time of, and before the accident, with reference to the negligence of *defendants*. No evidence of such "after acquired knowledge" is pointed out, and we can assume that there was none. If the *plaintiffs* were deprived of the benefit of this rule, no prejudice is shown.

We conclude a discussion of this appeal by a quotation from the case of *Parker* v. *Southern Pac. Co.*, 204 Cal. 609–614 [269 Pac. 622], which is factually very similar to this case, and which sustains the trial court in most of the rulings in respect to the instructions:

"Notwithstanding her realization that a train might be approaching on the main track, and that the driver might, by starting up her car to cross that track, plunge the party, including the plaintiff, into the jaws of death, she made no remonstrance and uttered no warning to the driver of the danger in entering upon the perilous position on the track. *It is impossible to lay down a general rule as a test of a passenger's responsibility under such circumstances.* At times it might be highly improper to suggest any course of action on the part of the driver. At other times the circum-

stances might be such as to charge the passenger with some duty to suggest caution or otherwise endeavor to protect himself. (See *Parmenter* v. *McDougall*, 172 Cal. 306 [156 Pac. 460]; *Stewart* v. *San Joaquin L. & P. Corp.*, 44 Cal. App. 202 [186 Pac. 160].) *Each case must rest upon its own set of facts, and the determination of those facts, as a general rule, is one for the jury. (Stewart v. San Joaquin L. & P. Corp., supra.) On the record before us it cannot be said that the jury might not find that the plaintiff was in some degree at fault in not apprising the driver of the impending danger."* (Italics ours.)

Coming now to the appeal of defendant Honig: Two causes of action were stated against him—one based upon the relationship of passenger, which would require evidence of ordinary negligence only, and one based upon the relationship of guest, which requires proof of wilful misconduct on his part. Both causes of action were submitted to the jury for determination. A motion for a directed verdict by this defendant on the cause of action based upon wilful misconduct, was denied. The same ruling was made upon a motion for nonsuit upon the cause of action based upon ordinary negligence. After verdict this defendant moved for judgment notwithstanding the verdict, reserving the right to move for a new trial, upon the grounds theretofore urged in support of the motion for directed verdict, that is, that, first, there was no evidence to support a finding of wilful misconduct on the part of the defendant Honig; and, second, there was no evidence to support a finding by the jury that Hoffart, the deceased, was a passenger and not a guest, thereby giving the plaintiffs a right to recover for ordinary neglect in the operation of Honig's truck. This motion was denied. Thereupon, plaintiffs moved the court for a new trial as to defendant, John Honig, as to the issue of damages alone, which motion was granted.

It is not denied that if the evidence supports a finding on either cause of action, the verdict must be sustained. Appellant first contends that the court erred in refusing to grant defendant's motion for nonsuit and his motion for a directed verdict as to the *second* cause of action, based upon *wilful misconduct*. It therefore becomes necessary to inquire into the sufficiency of the evidence, bearing in mind that upon motions of this character every favorable inference fairly de-

ducible, and every favorable presumption fairly arising from the evidence produced, must be considered as facts proved in favor of plaintiff.

██ We are of the opinion that a *prima facie* case of "wilful misconduct" was made out, under the provisions of California Vehicle Code, section 403 (Stats. 1935, p. 154). Proof of wilful misconduct depends upon the facts of each particular case. (*Candini* v. *Hiatt*, 9 Cal. App. (2d) 679 [50 Pac. (2d) 843] ; *Hagglund* v. *Nelson*, 23 Cal. App. (2d) 348 [73 Pac. (2d) 265].) Wilful misconduct has been defined as intentionally doing something in the operation of a motor vehicle which should not be done, or intentionally failing to do something which should be done under circumstances disclosing knowledge, express or to be implied, that an injury to a guest will be a probable result. (*Meek* v. *Fowler*, 3 Cal. (2d) 420 [45 Pac. (2d) 194] ; *Turner* v. *Standard Oil Co.*, 134 Cal. App. 622 [25 Pac. (2d) 988].) To constitute wilful misconduct there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury. (*Howard* v. *Howard*, 132 Cal. App. 124 [22 Pac. (2d) 279].) The foregoing definition was approved by this court in the case of *Haas* v. *Jones*, 29 Cal. App. (2d) 650 [85 Pac. (2d) 579]. The approaching train could have been seen for some one thousand feet from the scene of the accident. As the driver approached the crossing he slowed down to five miles an hour, and shifted into second gear. He knew the crossing was there, for some distance before he was struck by the train. The accident happened at 10:30 in the morning. When he shifted gears he determined to cross the track. He testified that there was nothing to prevent him from seeing the approaching train. When he started up the incline toward the track he "poured the gas on". Other facts are detailed in our discussion of plaintiffs' appeal. In *Koster* v. *Southern Pac. Co.*, 207 Cal. 753–762 [279 Pac. 788], it is said:

"When a man goes upon a railroad track he knows that he goes to a place where he will be killed if a train comes upon him before he is clear of the track. He knows that he must stop for the train, not the train stop for him."

The evidence is ample to justify a finding that the action of the driver in crossing the tracks in front of the approaching train was either a deliberate attempt to beat the train across, or that he proceeded onto the crossing in wanton and reckless disregard to the safety of the deceased. In *Hagglund* v. *Nelson*, 23 Cal. App. (2d) 348–351 [73 Pac. (2d) 265], it is said:

"Such conduct may not be said to amount to mere lack of judgment. *It was a wilful and reckless disregard for human life.* Under such circumstances it was the province of the trial court to determine whether such conduct was the result of a mere mistake of judgment, or whether on the contrary it constituted wilful misconduct on the part of the driver of the machine. *With that province we may not interfere under the facts of this case. . . .* In the present case we are satisfied the defendant did not drive his automobile directly in front of the rapidly approaching passenger train with the deliberate intention of injuring his guest, but we are convinced *that he did act with wanton and reckless disregard of the consequences of his conduct with knowledge, or the possession of facts which were equivalent to actual knowledge, that injury to his guest was likely to occur. Such conduct renders him guilty of wilful misconduct.*"

Both motions were properly denied.

■ It is contended that the court erred in granting plaintiffs' motion for a new trial on the sole issue of damages. It was urged by plaintiffs, in support of said motion, that the amount of damages was *grossly inadequate.* The attack is based more upon a matter of policy than from a legal point of view. The authority of the court to grant a new trial upon a limited issue is not questioned by this appellant. It is expressly conferred by section 662 of the Code of Civil Procedure. It is further conceded that the granting or denial of the motion rested in the sound discretion of the court. The verdict was general. Appellant complains because he cannot now determine whether the verdict was based upon the cause of action for ordinary negligence, or the cause of action based upon wilful misconduct—admittedly inconsistent in their nature. The right to submit such inconsistent issues is not controverted. If there was sufficient evidence to sustain a finding on *either* cause of action (as we have held), we regard the matter as finally concluded here. "The rule is

settled in this State that where several issues in a cause are tried and submitted to a jury for its determination, a general verdict may not be disturbed for uncertainty, if one issue is sustained by the evidence and is unaffected by error. (*Verdelli* v. *Gray's Harbor etc. Co.*, 115 Cal. 517 [47 Pac. 364, 778]; *Estate of Hellier*, 169 Cal. 77, 83 [145 Pac. 1008]; *Sessions* v. *Pacific Imp. Co.*, 57 Cal. App. 1, 27 [206 Pac. 653]; *Walton* v. *Southern Pac. Co.*, 8 Cal. App. (2d) 290, 305 [48 Pac. (2d) 108].) When a situation of this character is presented it is a matter of no importance that the evidence may have been insufficient to sustain a verdict in favor of the successful party on the other issues or that reversible errors were committed with regard to such issues. (*Big Three Min. & Mill. Co.* v. *Hamilton,* 157 Cal. 130, 141 [107 Pac. 301, 137 Am. St. Rep. 118].)'' (*Hume* v. *Fresno Irr. Dist.*, 21 Cal. App. (2d) 348–357 [69 Pac. (2d) 483].) The authority of the trial court to grant a new trial upon a part of the issues is an expedient which has received the approval of many interested in the proper and prompt administration of justice. It has resulted in a great saving of time and expense to litigants. There may be occasions, as indicated by the cases cited by appellants, when the procedure works a hardship, but those are exceptional. If the evidence of liability is sufficient (as we hold it to be in this case), why go to the expense and trouble of retrying *all* the issues? Because the verdict is smaller than the trial judge believes is justified by the evidence, it does not necessarily follow, as counsel for appellant contends, that the jury *never did* determine the liability, and that the verdict was the result of a compromise. If, as here, there was sufficient evidence to support a verdict on *either* cause of action, it is conceded by appellant that the granting of the motion was not an abuse of discretion. As to the position of the trial court, it may be assumed that it was as familiar with the law as an appellate court. It was satisfied that there was evidence sufficient to establish liability upon the part of Honig. Appellant states that from the state of this record the trial court could not know upon what ground the jury based its finding of liability, and therefore could not know and could not rightly judge the merits of plaintiff's motion for a new trial on that issue. The answer to this is that the court would *never* know, and the law does not contemplate that it should. A retrial upon all is-

sues would not alter this condition. The only concern of the trial court was whether or not there was evidence sufficient to establish the liability of appellant upon *either* cause of action. We have held that there was, and of course the trial court must have entertained the same view. There was no abuse of discretion in granting the motion.

The giving of the following instruction is counted upon as error:

■ "A person about to cross over such crossing cannot rely upon the assumption that the employees operating a train on the track will give the proper warnings of approach by sounding the bell and blowing the whistle. A person must look and listen even though he hears no such warnings of approach."

This instruction is a correct statement of the law. (*Hutson* v. *Southern Pac. Ry. Co.*, 150 Cal. 701 [89 Pac. 1093]; *Koster* v. *Southern Pac. Co.*, 207 Cal. 753 [279 Pac. 788].) It is contended, however, that this instruction would reasonably be understood by the jury as having application not only to the driver, but to a passenger or guest, and that a different rule applies with reference to the latter two. It is unnecessary to inquire into such difference. The discussion of the preceding instructions above covers the situation here. We are satisfied that this instruction should be reasonably construed as being applicable to the party in charge of the operation of the vehicle—the driver. What we have said in this connection in our discussion of the instructions referred to above is equally in point here, and it is unnecessary to repeat it. Assuming that the view of appellant is correct, and that the instruction would only be proper in a case where there was evidence of negligence on the part of *deceased*, we believe it was justified by the record here.

■ Complaint is made of the action of the court in refusing to give an instruction on the subject of contributory negligence upon the part of the deceased guest. We find that the court gave an instruction upon this subject, but such instruction is characterized as a "bare definition", and it is urged that there should have been greater elaboration on the facts. While the *proposed* instruction might well have been given for the purpose of clarity and precision in relation to the facts, the instruction *given* fully stated the law, and no prejudice resulted from its brevity. A second instruction on

the same subject was also refused, and what we have said above is also applicable to it.

█ It is urged that the court erred in granting the motion of defendant Southern Pacific Company for a nonsuit as to this defendant. From what we have said above, it clearly appears that this appellant was guilty of contributory negligence as a matter of law, and the trial court properly granted the motion.

█ Finally, it is contended that the trial court erred in admitting the testimony of witness Mehrer, concerning a conversation had with appellant prior to the accident, to the effect that Honig asked him (the witness) if he was free to go to work for Honig in the matter of getting gravel. We assume that plaintiffs sought to elicit this testimony for the purpose of proving that deceased was a passenger. Complaint is also made that witness Willis was permitted to detail a conversation with witness Mehrer on the afternoon of the accident, when the latter stated that it was lucky he did not go with Honig that morning or it might have been him instead of Hoffart (the deceased). During the trial, the wife of decedent testified that Honig had asked deceased to help him obtain gravel (they were on their way to obtain gravel at the time of the accident). It is contended that the first conversation was irrelevant. We are doubtful of its relevancy, but as the wife had positively testified that appellant had asked deceased to help him, it was merely cumulative evidence, and without prejudicial effect. The second conversation was clearly hearsay, but of such trivial evidentiary value or effect that it could scarcely be held prejudicial.

An examination of the entire record shows that in spite of the various conflicting interests, the case was fairly tried, and that the jury was fairly and fully instructed.

The judgments and order appealed from are affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 29, 1939, at which time the opinion was modified and the following opinion rendered thereon:

THE COURT.—Our attention has been called by appellants to a certain inaccuracy in the statement of facts appearing in the opinion. We stated that the road which was traversed by the truck paralleled the railroad and then turned to the right and crossed the track. The record shows that the road does not run parallel to the track, but approaches the track in a straight line at an angle of 40 degrees. The state highway parallels the railroad on the opposite side of the track. It would appear, however, that the inaccuracy mentioned was more favorable to appellants than the correction which we here make. The visibility of the driver and passenger or guest was far better when approaching the track at an angle, than it would be in a parallel position, as in the latter situation the train would be approaching directly from the rear of the truck.

It is hereby ordered that the portion of the second paragraph on page 3 of the opinion (and as reported in 98 Cal. App. Dec. 89, at page 91, second column, beginning in the first line), commencing with the words ''The two men'' and ending with the words ''from the rear of the truck'', be stricken out, and the following substituted in lieu thereof: ''The two men were seated in the cab of the truck, and were driving along a county road which runs southerly in a straight line, intersecting the track at an angle of forty degrees. The train was approaching from the north, so that both train and truck were converging upon the crossing, southward bound.''

It is ordered that the opinion be modified as indicated, and that a rehearing be denied.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 24, 1939.