[Civ. No. 4147. Fourth Dist. Nov. 17, 1950.]

JAMES M. PARKS, Appellant, v. G. GREGORY DEXTER et al., Respondents.

Wing, Wing & Brown for Appellant.

Swing & Gillespie for Respondents.

MUSSELL, J.—Plaintiff, who was employed as a cook by the operators of the Bridgehaven Café at Whitewater in Riverside County, sustained personal injuries when fluorescent light fixtures fell upon him from the ceiling of the café. Trial of the action against defendants, who installed the fixtures under contract, was had before a jury and a verdict returned for plaintiff in the sum of $20,000. A motion for a new trial was made on the following grounds: Irregularity in the proceedings of the court and jury by which defendants were prevented from having a fair trial; excessive damages which were given under the influence of passion and prejudice; insufficiency of the evidence to justify the verdict and the judgment; that the verdicts and judgment were against the law and that errors of law occurred at the trial which were excepted to by defendants. The order for a new trial was granted on the ground of insufficiency of the evidence to justify the verdict and on the further ground of irregularity in the impanelment and proceedings of the jury, in that one Edna G. Bromilaw was sworn and served on the jury in the place and stead of one Duncane Campbell, the court and counsel for plaintiff and defendant believing that said Edna G. Bromilaw was the said Duncane Campbell. A new trial was granted on all the issues and from this order the plaintiff appeals.

The matter of granting or refusing to grant a motion for a new trial is largely within the discretion of the trial court and in passing upon such a motion, the trial court is not bound by the rule of conflicting evidence but must weigh and consider the evidence for both parties and determine for itself the just conclusion to be drawn from it. If the court is satisfied that the finding of the jury is contrary to the weight of the

evidence, it may grant a new trial. (*Pirrone* v. *Nuccio*, 78 Cal.App.2d 864, 868 [179 P.2d 18].)

As was said in *Estate of Phillipi*, 76 Cal.App.2d 100, 103 [172 P.2d 377]:

"In cases of this kind, as in all others where conflicts in the evidence exist, those conflicts are addressed to the trial court. Here we have the presumption on the one hand supporting the verdict and judgment, and the testimony of Mr. Wilson in conflict with it. While, in cases of this kind, the presumption can be overcome only by clear, convincing and satisfactory evidence, the question of what constitutes such evidence, and when the presumption is overcome ordinarily and primarily, are questions addressed to the trier of fact. His conclusions on them should not be disturbed on appeal except in cases of an abuse of discretion or where there is no sufficiently substantial evidence supporting them.

"On hearing a motion for new trial the trial judge sits as a thirteenth juror. He may weigh the evidence, resolve conflicts in it, judge the credibility of the witnesses and reject the testimony of any witness whose testimony he doubts, or accept that of a witness he believes. An appellate court has no such power. Ordinarily we are bound by the decision of the trial judge where the evidence is conflicting and there is reasonably substantial evidence or reasonable inferences to be drawn from the evidence supporting the decision of the trial court. (*Sassano* v. *Roullard*, 27 Cal.App.2d 372 [81 P.2d 213]; *Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421 [213 P. 42, 26 A.L.R. 123].)"

In *Roberts* v. *Southern Pac. Co.*, 54 Cal.App. 315, 319 [201 P. 958], it is said:

"If there be any appreciable conflict in the evidence, the action of the trial court in granting a new trial is not open to review. Even in those cases where there may not appear to be a conflict in the evidence, and where all the proofs seem to be favorable to one or the other of the parties litigant, the question as to the probative force, or evidentiary value of the testimony, is one the determination of which is with the trial court in a proceeding on a motion for a new trial, where, as here, one of the grounds is the insufficiency of the evidence to justify the verdict. (*Otten* v. *Spreckels*, 24 Cal.App. 251, 257, [141 P. 224].)"

And on page 318:

"The rule is well settled by a long line of decisions in this state that the granting or refusing of a new trial is a matter

largely within the discretion of the trial court, and it is only when this discretion has been abused that the appellate court will reverse the order. (*Merralls* v. *Southern Pac. Co.*, 182 Cal. 19, 22, [186 P. 778].)''

In *Pirrone* v. *Nuccio, supra,* 868, it is said, in effect, that where there is no substantial conflict in the testimony on material issues, and the evidence as a whole would be insufficient as a matter of law to support a verdict in favor of the moving party, an order granting a new trial cannot be sustained.

The reasons given by the trial judge in support of his order granting a new trial are not binding on this court and if there be any grounds upon which the order can be sustained, it will be affirmed, irrespective of the particular ground or grounds stated in the order. (*Gray* v. *Robinson,* 33 Cal. App.2d 177, 180, 181 [91 P.2d 194].)

One of the grounds stated in the order granting a new trial was insufficiency of the evidence to justify the verdict.

### The Evidence

It is conceded that plaintiff was injured by falling fluorescent light fixtures while sitting at the counter in the café named; that on January 29, 1948, plaintiff's employers contracted with defendants to install the lighting fixtures above the dining counter in the café; that the said installation was completed on the 15th of February, 1948, and the accident happened on March 21, 1948; that the fixtures involved extended the full length of the dining room in which plaintiff was injured, were directly over the dining counter and were in seven sections, extending east and west; that each section consisted of four 7 foot, 9 inch fluorescent tubes attached to a transformer; that at each end of the string of lights the tubes terminated in a single transformer and all the other transformers were double; that the transformers at the ends of the room weighed about 12 to 15 pounds and the other units (consisting of the plate, transformer and housing) weighed about 30 pounds; that plaintiff was sitting at the counter in the east end of the room when the second transformer swung down from the ceiling, broke loose and struck plaintiff on his right shoulder and arm. It is not disputed that the fixtures were held to the ceiling by means of metal housing plates, 10 x 12 inches and 1/16th of an inch thick, except at each end of the string, where the plates were 6 x 10 inches, for the reason that the end transformers were approximately one-half the weight of the others. These plates were each affixed to the ceiling joists by means of four round

headed metal screws, 1½ inches in length and approximately 3/16th of an inch in diameter. The portion of the ceiling from which the fixture fell was of plasterboard, firtex or celotex, varying from 1/4th to 3/8th of an inch in thickness. It was in 4 x 8 feet sheets and was nailed to the ceiling joists which were on four foot centers.

There is a conflict in the evidence as to whether the fixtures were properly installed. An electrical inspector for the city of Banning testified that the method of installing the transformers was "not a recognized or safe method." However, he stated that his opinion was based upon the fact that the screw was too small and the ceiling was not designed to support any fixture. In this connection, he also testified that he did not know if there were any joists in the ceiling; that he did not know how the transformer box or plate was affixed to the ceiling or how many screws were used in affixing the metal plate; that he did not know what kind of ceiling was present at the time of the accident. The witness made no examination or inspection at the time of the accident and was not asked whether four metal screws, such as were used in each plate, would hold the weight of the transformer and box (approximately 30 pounds).

Witnesses for defendant (the two men who made the installation) testified that the plates, as installed, held the fixtures firmly in place by means of 1½ inch screws turned into the solid wood of the ceiling joists until they could not be turned any more with a screwdriver. After penetrating the 5/16th of an inch of the plasterboard of the ceiling these screws penetrated approximately 1¼ths of an inch into hard wood and the trial court may well have inferred therefrom that the screws became loosened for some other reason than negligence of the defendants. There was evidence that during the interval of approximately five weeks between the installation and the accident the ceiling where the fixtures were installed was painted by a workman not employed by defendants, and in this connection, while witnesses testified that they saw the holes where the screws came out, no examination was made by anyone to determine whether the screws were pulled out of the ceiling joists by the weight of the fixture or had been removed and improperly replaced after the original installation.

The question of negligence is one of fact and the trial court, sitting as a thirteenth juror, was entitled to weigh the evidence, resolve conflicts in it, judge the credibility of the

witnesses and to determine whether the accident was proximately caused by the acts of defendants. ■ We are not able to say that any abuse of discretion appears, or that the evidence as a whole would be insufficient as a matter of law to support a different verdict.

## Damages

■ Plaintiff sustained injuries to his right hand and arm. He testified that "he could hardly do anything with his right arm"; that he could not pick up any heavy weight because he had no control of the grip in the fingers and that it was necessary for him to sleep on his left side; that his trade has been lost to him as it cannot be performed with one hand; that since the injury he has not been able to work and that his right arm is useless and continuously pains him.

The medical testimony adduced was to the effect that on the day of the accident plaintiff was able to move his arm but was not able to completely straighten out his wrist and fingers, mainly his fourth and fifth fingers; that about three weeks after the accident plaintiff had difficulty in extending his fingers in that the muscles of two fingers were in spasm, and there was a numbness over the side of his hand and right arm; that the condition improved during the next few months; that there was some permanent disability in the right hand; that he would not have the normal spread and adduction of those fingers, but that the last time he was examined he had good use of the fingers. At the time of the trial, October 3, 1949, one of the doctors who had attended plaintiff examined plaintiff in court and testified in part as follows:

"Perhaps now he has a little more difficulty with the middle finger than he had initially. He did have, at one time, when I saw him, and perhaps several times, difficulty keeping this out in extension contrary to the two other fingers. Well, it does it better now, the ring and little finger are better now than when I initially saw him. They are not much better than in February of this year. The patient has good function of the thumb and index finger and has had throughout most of the interval."

From the medical testimony it appears that plaintiff's right hand and arm are not useless as claimed by him and the permanent injury, if any, involves a restricted use of two or three fingers of the right hand.

The jury returned a verdict in plaintiff's favor for $20,000 and one of the grounds of the motion for a new trial herein was that the damages were excessive. The order granting the

new trial must be affirmed if it is sufficient on this ground alone. It was within the province of the trial court to pass upon the sufficiency of the evidence to sustain the verdict for the damages allowed and this court may not reverse the order unless it clearly appears that the trial court abused its discretion. (*Leaper* v. *Gandy*, 22 Cal.App.2d 475, 478 [71 P.2d 303] ; *Pitt* v. *Southern Pacific Co.*, 121 Cal.App. 228, 239 [9 P.2d 273] ; *Gray* v. *Robinson, supra*, 181.) In view of the conflict in the evidence as to the extent of the injuries received by plaintiff and the amount awarded therefor by the jury, we cannot say that an abuse of discretion was shown in granting a new trial on this ground.

One of the reasons given by the trial court for granting a new trial was that of irregularity in the impanelment and proceedings of the jury. Since we have concluded that the order must be affirmed on the other grounds herein discussed, it is not necessary to pass upon this question.

The order is affirmed.

Barnard, P. J., and Griffin, J., concurred.