[L. A. No. 21850. In Bank. Aug. 13, 1952.]

DENNY LEIPERT, a Minor, etc., et al., Respondents, v. BERNARD M. HONOLD et al., Appellants.

Forgy, Reinhaus & Forgy, Arthur M. Bradley and S. M. Reinhaus for Appellants.

Harvey, Rimel & Johnston and Fred D. Johnston for Respondents.

TRAYNOR, J.—On March 13, 1948, at about 11 p. m., two automobiles loaded with teen-age children were traveling west along U. S. Highway 101 near Newport Beach. The one in front was driven by Clifton Edwards. The other one, in which plaintiff Denny Leipert, 15, was riding, was driven by Phillip Duff, 18, whose parents owned it. It was a dark night, and it had sprinkled about an hour and a half before the accident. A defect in the steering apparatus caused Duff to lose control of the car, so that it swerved to the left across the highway. It was struck by a car driven in the opposite direction by defendant Woodrow John Honold. Plaintiff Denny Leipert and one other occupant of the Duff car were injured; the other five children, including the driver, were killed. Honold and his only passenger, Eleanor Brady, who is now his wife, were injured.

Denny brought this action through Charles J. Leipert, his father and guardian *ad litem,* alleging negligence on the part of Woodrow John Honold. Denny's father also sued on his own behalf for reimbursement of medical expenses. Bernard M. Honold and George B. Honold, doing business as Honold Brothers Mortuary, were joined as defendants; they owned the car driven by Woodrow John Honold and had consented to his using it on this occasion. The case was consolidated for trial with four wrongful death actions brought against the same defendants by the parents of the children who were killed.

The evidence was sharply conflicting. Denny testified that the Duff. car was travelling about 40 miles per hour; that the driver said there was something wrong with the steering apparatus; that shortly thereafter "the wheels started acting funny, they started shimmying"; that "the car jerked across the road, and we came to a stop"; that "Our front wheels were away off the road and we were just about off the road"; that the driver "put on the brakes quick"; that the driver "opened his door and put one foot out and looked over the top of the hood of the car"; that the driver "got out and then got back in again, and then he said, 'Some of you kids get out of the car,' so he was going to try and back it up on the side of the road and see what was wrong, and he told me to 'get out' and I got the door open about 6 inches and I guess that's when it happened"; and that he was knocked unconscious. He testified that he estimated that the Duff car had stopped about 13 seconds before it was struck. In answer to the question how he arrived at this figure he re-

plied: "Well, I went down to the scene of the accident and I had somebody get behind me with a watch, and I went through the actions that the car did when it stopped, and what we did, and then I told the person in back of me, 'That was about when the car hit,' and it was about thirteen seconds." He testified that just before the Duff car got out of control, the Edwards car was from 20 to 35 yards ahead; that the brakes were not applied when the car started shimmying; that as it went across the highway "it didn't skid, it just tipped and was making a squealing sound"; that "it sounded like when you go around a corner too fast with a car, it will sort of squeal." He testified that he did not see the Honold car before the collision.

Defendant Woodrow John Honold testified that he first saw the Edwards and Duff cars when they were about 200 to 250 yards away; that he passed the first car and at the same moment the other car swung over; that it first came across at an angle and then sharply turned across the road; that he was 100 to 125 feet away from it when it started across; that its lights flashed in his eyes; that it was moving rapidly; that he was traveling from 40 to 50 miles an hour; that as the Duff car turned in front of him he tightened his grip on the wheel and turned to the right; that he did not put on his brakes; and that the other car was moving when the two cars collided.

The only other eyewitness to the accident was Jim Oakes, a boy who was riding in the rear seat of the Edwards car. He testified that he looked back and saw the Honold car hit the Duff car; that "the Duff car was at right angles with the road, as I looked back, I just got a glimpse of the lights of the Honold car on it, and then they hit and it kind of lifted the car up"; and that when he looked back the Edwards car was about 900 feet from the point of collision. No one in the Edwards car heard the collision.

A sergeant of the Newport Beach Police Department and an officer of the California Highway Patrol testified that at no point in the vicinity of either car were there any skid marks.

Lieutenant Smith, a traffic officer, was called as an expert by plaintiffs. On direct examination he was asked if he had formed an opinion as to whether or not the Duff car "was moving at the moment of impact." He replied that he had, but defendants' objection to his giving his opinion was sus-

tained. He gave his opinion that the Honold car was traveling in excess of 45 miles an hour, but defendants' objection to his giving his opinion as to the "minimum or maximum" speed of the Duff car was sustained. He gave his opinion on cross-examination that a car traveling 40 to 45 miles an hour, under road conditions like those in the present case, could not be stopped within a hundred feet without the application of brakes.

The jury returned verdicts in favor of the plaintiffs in all five actions. In the Leipert case, Denny was awarded damages of $500 against all three defendants jointly and, in addition, $700 against Woodrow John Honold alone; Denny's father was awarded $1,000 against all three defendants jointly.

Defendants' motion for a new trial was denied. The Leiperts' motion for a new trial on the issue of damages only was granted as to Denny and denied as to his father. The trial court's order stated that "the said motion for a new trial is granted upon the ground of insufficiency of the evidence to justify the verdict in that the amount awarded by the jury is not in conformity with the evidence adduced at the trial and is inadequate though not so far inadequate as to indicate passion or prejudice." Defendants have appealed from the judgment and from the order granting Denny a partial new trial. No appeals were taken in the other four actions.

■ The power of a trial or appellate court to order a new trial on fewer than all the issues is generally recognized (see 66 C.J.S., New Trial, § 11, p. 87; 39 Am.Jur., New Trial, § 21, p. 44; 98 A.L.R. 941), and is authorized by statute in this state. (Code Civ. Proc., §§ 657, 662.)

■ The purpose of limited retrials is to expedite the administration of justice by avoiding costly repetition. Such retrials should be granted, however, only if it is clear that no injustice will result. (*Gasoline Products Co.* v. *Champlin Refining Co.*, 283 U.S. 494, 499 [51 S.Ct. 513, 75 L.Ed. 1188]; see 66 C.J.S., New Trial, § 11, p. 88.) Some courts have expressed reluctance to limit new trials in negligence cases, suggesting that only rarely is such a step proper (*Simmons* v. *Fish*, 210 Mass. 563, 570 [97 N.E. 102, Ann. Cas. 1912D 588]; *Murray* v. *Krenz*, 94 Conn. 503, 508 [109 A. 859].) Even in California, where new trials limited to the issue of damages have frequently been approved in personal injury and wrongful death actions, it has been held that a request for such a trial should be considered with the utmost cau-

tion (*Donnatin* v. *Union Hardware & Metal Co.*, 38 Cal.App. 8, 11 [175 P. 26, 177 P. 845]; *Bencich* v. *Market St. Ry. Co.*, 20 Cal.App.2d 518, 528 [67 P.2d 398]) and that any doubts should be resolved in favor of granting a complete new trial. (*Keogh* v. *Maulding*, 52 Cal.App.2d 17, 21 [125 P.2d 858].)

██ The decision on limiting the new trial appropriately rests in the discretion of the trial judge. It is presumed that in passing upon the motion he has weighed the evidence and the possibility of prejudice to the defendant. His decision will not be reversed on appeal unless an abuse of discretion is shown. (*Tumelty* v. *Peerless Stages*, 96 Cal.App. 530, 532 [274 P. 430]; *Amore* v. *Di Resta*, 125 Cal.App. 410, 413 [13 P.2d 986]; *Sanford* v. *Wilcox*, 13 Cal.App.2d 193, 194 [56 P.2d 548]; *Tripcevich* v. *Compton*, 25 Cal.App.2d 188, 191 [77 P.2d 286]; *Hoffart* v. *Southern Pac. Co.*, 33 Cal. App.2d 591, 602 [92 P.2d 436]; *Cox* v. *Tyrone Power Enterprises Inc.*, 49 Cal.App.2d 383, 390 [121 P.2d 829]; *Adams* v. *Hildebrand*, 51 Cal.App.2d 117, 118 [124 P.2d 80]; *Hughes* v. *Schwartz*, 51 Cal.App.2d 362, 364-365 [124 P.2d 886]; *Tornell* v. *Munson*, 80 Cal.App.2d 123, 124 [181 P.2d 112].)

██ Such an abuse is shown when the damages are inadequate, the record discloses that the issue of liability is close, and other circumstances indicate that the verdict was probably the result of prejudice, sympathy, or compromise or that for some other reason the liability issue has not actually been determined.

██ There can be no doubt that the damages awarded plaintiff Denny Leipert were inadequate. Forty or fifty stitches were required to close the lacerations of his scalp and forehead, which will remain partially scarred. His pelvis was broken in two places; one fracture was complete. There was a definite shock of the brain and nervous system controlling the eyes. He also suffered a rupture of the bladder, which necessitated an abdominal operation that left a considerable amount of scar tissue in and around the bladder. He was confined in the hospital for about three weeks and was then removed to his home, where he remained in bed another six or seven weeks. Several weeks after he returned home he suffered a low-grade bladder infection, which was probably a result of his injuries. Approximately five months elapsed from the date of the accident before he was able to go about his usual activities.

It is also readily apparent from the record that the issue of liability was very close. The Duff car and the Honold

car were approaching each other on a curved-four-lane highway on a dark night. When the Duff car got out of control and crossed to the wrong side, the driver of the other car was confronted with a situation demanding rapid reactions. Whether the Duff car was moving into the path of the other car when it was struck or whether it had stopped long enough before it was struck to enable a reasonably careful operator of the other car to avoid a collision was the crucial question in the case. The testimony that the Duff car was stopped for 13 seconds before it was struck was that of a 15-year-old boy who was knocked unconscius at the time and who was later timed in going ''through the actions that the car did when it stopped and what we did.'' The testimony of Jim Oakes, the boy in the Edwards car, also presented the jury with a close question of fact. Plaintiff contends ''If the Edwards automobile was traveling at 40 miles per hour it was covering 58.7 feet per second and if immediately before the steering mechanism of the Duff automobile broke, the two vehicles were only a few car lengths apart, approximately 15 seconds would have elepsed between the time when the Edwards automobile passed the point where the collision subsequently occurred and arrived at the point from which Jim Oakes saw the collision occur.'' Defendants argue that this contention does not take into consideration the speed of the Duff car, the fact that the plaintiff testified that ''there were no brakes on in the Duff car'' or the fact that there were no skid marks in the vicinity of either car. They conclude that if plaintiffs' ''version of the collision were true the Duff car coasted without the application of brakes and came to a stop by the loss of momentum. This would mean that the Duff car starting at the speed of at least forty miles per hour gradually lost momentum and came to a stop. The difficulty with the calculations is that they consider only the Edwards car. It is impossible to accept the conclusion that, without the application of brakes or skidmarks on the highway, the Duff car, which had been travelling at least 40 miles per hour, suddenly stopped and remained stopped for at least thirteen seconds, while the Edwards car travelled nine hundred feet west.''

The record shows that the jury had great difficulty with these questions and indicates that its verdict was probably the result of a compromise.

The jury went out at 11:30 a. m. At 4 p. m. it returned and asked to hear that part of the testimony of Lieutenant

Smith relating to the crucial question whether the Duff car was moving or stopped when the collision occurred. His testimony on direct examination was read to the jury, but his testimony on cross-examination was not. Counsel stipulated that it was an accurate statement of his testimony. Thereafter two jurors insisted that Lieutenant Smith had given other testimony bearing on the question whether the Duff car was moving or stopped at the time of impact. The court said, ''The testimony on that point has been read to you'' and sent the jury out. It is apparent that the testimony of the witness that was not read to the jury supports the inference that the Duff car was moving at the instant of impact, whereas his testimony that was read supports a contrary inference. Defense counsel did not request the reading of the additional testimony or make any objection or comment. (See *Duncan* v. *J. H. Corder & Son,* 18 Cal.App.2d 77, 84 [62 P.2d 1387].) The important consideration, however, is not whether the court committed error in not having the testimony on cross-examination read to the jury, but the fact that the interest of the two jurors in having that testimony read indicates that the jury was having great difficulty in finding any negligence on the part of Woodrow John Honold.

At 9:17 p. m. the jury returned and announced that it had reached its verdicts. In each of the wrongful death cases the verdicts awarded $5,000 against all three defendants jointly and an additional $300 against Woodrow John Honold. In the Leipert case the verdict awarded Denny Leipert $4,000 against all three defendants jointly and an additional $300 against Woodrow John Honold, and awarded Charles J. Leipert $1,000 against all three defendants. The award against the owners of the Honold car exceeded the maximum permitted by Vehicle Code, section 402. The jury was polled on the verdicts, more than three answering that they were not their verdicts. In the Leipert case five jurors answered ''No'' and one juror answered ''half yes, and half no.'' The court announced that the verdicts were incomplete and then read section 402 of the Vehicle Code and the rest of an instruction explaining how the section was to be applied. The jury returned to the jury room and was again brought in at 11:30 p. m., when the foreman announced that they could not reach a verdict. Upon inquiry by the court each juror expressed the opinion that they would be unable to agree. After considerable discussion the jury was again sent out. At 12:33 a. m. the jury returned with a verdict in this action

awarding Denny Leipert $500 against all three defendants jointly, and an additional $700 against Woodrow John Honold. The jury was again polled and it stood nine to three in favor of the verdict.

The jury was out 13 hours, including the time out for lunch and dinner. After it was out four and a half hours it asked to have material evidence on the issue of liability reread. Five hours later it returned a verdict that was repudiated by six of the jurors. Three and one-half hours later it brought in a nine-to-three verdict awarding $1,200 instead of the $4,300 provided in the earlier proposed verdict.

The long deliberation could not have been caused by any dispute in regard to the nature and extent of Denny's injuries. After his parents testified with regard to expenses incurred in his treatment, no questions were asked on cross-examination. No evidence was introduced by defendants to contradict any of the testimony of Denny or his father in regard to the nature or treatment of Denny's injuries. Any difficulty must have arisen from a cause other than difficulty in regard to the nature and extent of his injuries. It is true that the jury was confused on the apportionment of damages under Vehicle Code section 402, but it is also true that it had great difficulty in determining whether or not defendant Woodrow John Honold was negligent and that only after prolonged disagreement was a 9-3 verdict returned awarding grossly inadequate damages.

We have concluded that the record in this case so strongly indicates that the inadequate verdict for Denny Leipert was the result of compromise that it would be unjust to defendants to have a new trial limited to the issue of damages.

Although defendants have appealed from the judgment, they have limited their arguments to the appeal from the order granting Denny Leipert a limited new trial. They seek a reversal of the order granting a limited new trial, and a reversal of the judgment only if that is necessary to preclude a limited new trial. Moreover, they have expressly stated that if the order is reversed they wish the judgment to stand. Plaintiffs also have expressly stated that they wish the judgment to stand if a limited new trial may not be had. They did not appeal from the judgment and did not move for a complete new trial in the event a limited new trial should be denied; they have vigorously urged that they intended that "the action of the trial court be restricted to either granting or denying the motion as made" and that

neither the trial court nor the appellate courts have jurisdiction to order a complete new trial on the basis of that motion.. It is clear, therefore, that all parties have deliberately waived any rights to a reversal of the judgment. Under these circumstances, the judgment should be affirmed. (*Estate of Hinde,* 200 Cal. 710, 715-716 [254 P. 561]; *Hatch* v. *Galvin,* 50 Cal. 441, 443; *Hartman* v. *San Pedro Commercial Co.,* 66 Cal.App.2d 938 [153 P.2d 214].)

The order granting a new trial is reversed. The judgment is affirmed. Each party is to bear his own costs on appeal.

Gibson, C. J., Shenk, J., Edmonds, J., Schauer, J., and Spence, J., concurred.

CARTER.—I dissent.

The holding of the majority of this court in this and two companion cases,* in effect, nullifies the statutory provision (Code Civ. Proc., § 657) which expressly authorizes the trial court to grant a motion for a new trial on "part of the issues," when such new trial is limited to the issue of damages only in cases where the damages awarded are deemed inadequate by the trial court. While there is no code section which expressly specifies inadequancy of damages as a ground for granting a motion for a new trial, it has been held that it comes within the purview of insufficiency of the evidence to support the verdict or judgment (Code Civ. Proc., § 657[6]; 20 Cal.Jur. 104). Such being the case, the same rule should be applied to the granting of a motion on the limited issue of damages, as to all issues. The rule in the latter type of cases being that if there is a conflict in the evidence, even though the evidence is overwhelmingly in favor of the party against whom the motion is granted, the order of the trial court granting a new trial on insufficiency of the evidence will not be disturbed on appeal (*Brignoli* v. *Seaboard Transp. Co.,* 29 Cal.2d 782, 791 [178 P.2d 445]; *Ballard* v. *Pacific Greyhound Lines,* 28 Cal.2d 357, 358 [170 P.2d 465]; *Brooks* v. *Metropolitan Life Ins. Co.,* 27 Cal.2d 305 [163 P.2d 689). The same rule is applicable where a new trial is granted on the ground of erroneous instructions to the jury and it is claimed by the party against whom the new trial was granted that the error was not prejudicial (*Mathers* v. *County of Riverside,* 22 Cal.2d 781, 786 [141 P.2d 419]; *Fin-*

*See *Rose* v. *Melody Lane, post,* p. 481 [247 P.2d 335], and *Cary* v. *Wentzel, post,* p. 491 [247 P.2d 341].

*ney* v. *Wierman,* 52 Cal.App.2d 282 [126 P.2d 143]; *Thompson* v. *California Const. Co.,* 148 Cal. 35 [82 P. 367]; *Pettigrew* v. *O'Donnell,* 32 Cal.App.2d 502 [90 P.2d 93]; *Fennessey* v. *Pacific Gas & Elec. Co.,* 10 Cal.2d 538 [76 P.2d 104]; *Simmons* v. *Lamb,* 35 Cal.App.2d 109 [94 P.2d 814]). From the foregoing it necessarily follows that the same reasons exist for sustaining the trial court in granting a new trial limited to the issue of damages only as to the granting of a new trial on all issues on the ground of insufficiency of the evidence, or that prejudice resulted from an erroneous instruction.

The majority concede there is wisdom and merit in the legislation which authorizes a trial court to grant a new trial on limited issues. This should be obvious. Then the majority proceed by these three decisions to deprive the trial court of the power conferred upon it by statute to grant a new trial on the issue of damages only where the damages awarded are obviously inadequate.

These decisions take a step backward in our judicial procedure. They are the products of that same reactionary philosophy which has been invoked by a majority of this court to curtail the power of trial judges in their effort to accord to the less fortunate a greater degree of equal justice under law. (See *Sanguinetti* v. *Moore Dry Dock Co.,* 36 Cal.2d 812 [228 P.2d 557].) There can be no doubt that the sole and only basis for these decisions is the fear by the majority that the plaintiffs in these cases might receive greater awards of damages than if the issue of liability was retried. To prevent this result the majority is willing to destroy the effectiveness of this remedial legislation. What is the court-made rule which the majority apply to accomplish this result? It seems to be that if it appears to the majority that there is a conflict in the evidence as to liability, and the damages awarded are inadequate, it is an abuse of discretion for the trial court to grant a motion for a new trial on the issue of damages only. Where does this leave the trial court? Or, a question of greater moment is, what should a plaintiff do under such circumstances? Obviously, in the face of these three decisions, a trial judge or trial lawyer would be stupid to consider retrying anything other than all issues in any personal injury action under such circumstances, even though they had positive information that the jury had no difficulty in determining the issue of liability and that the issue of damages was the only problem which concerned it. And I

cannot refrain from expressing my utter amazement at the ineptness of the majority in attempting to rationalize the deliberations and reactions of the juries in these cases. Obviously, such rationalization is not the function of this court. If it must be done, it is exclusively a function of the trial court. Those who have had experience in the trial of jury cases know that many factors influence the ultimate decision reached, and the trial court is in a much better position than this court to know what factors prevailed. Some jurors have fixed views with respect to economics, while others have racial or religious prejudices, which may influence them adversely to the cause of justice. While the record might not disclose such leanings, they would be apparent to an astute trial judge. Yet the majority of this court say, that in cases such as we have here, a trial judge is guilty of an abuse of discretion if he grants a new trial on the issue of damages only, even though he is satisfied that the inadequacy of an award of damages was due to one or more of the factors above mentioned, or some other factor which had no bearing whatever on the issue of liability. For this court to invade the province of the trial court in this field is as unwise as it is unfortunate.

For example, a man with an earning capacity of $300 per month, and a life expectancy of 20 years, who loses a leg in an automobile accident and is thereby incapacitated from pursuing his occupation, is awarded $10,000 by a jury. At the present value of money this would appear to be inadequate. But, would the majority of this court so hold if a trial judge denied a motion for a new trial made by plaintiff on the ground that the award was inadequate? It certainly would not. But, if the trial court would grant such a motion on the issue of damages only, the majority would obviously reverse if there was a conflict in the evidence on the issue of liability. In other words, the majority would hold the award inadequate as a matter of law in the latter instance, but not so if the motion for a new trial were denied or granted on all issues. The foregoing results are inescapable under the specious reasoning in the majority opinions in these three cases. The only thing that is made clear by these decisions is that the majority do not approve of a trial court granting a motion for a new trial on the issue of damages only in a case where the damages awarded are inadequate and there is a conflict in the evidence on the issue of liability.

In such a case, the majority say, there must be a new trial of all the issues or none at all.

Of course, if a new trial were granted on the issue of damages only in a case where the trial court was of the opinion that the damages awarded were excessive, the majority would not disturb such an order. They would not do so for the reason that they would fear that proof of the facts establishing liability might result in a larger award of damages to the detriment of the defendant. (*Fuentes* v. *Tucker,* 31 Cal.2d 1 [187 P.2d 752].)

The majority opinion states "that a request for such a trial (on the issue of damages only) should be considered with the utmost caution," citing *Donnatin* v. *Union Hardware & Metal Co.,* 38 Cal.App. 8 [175 P. 26, 177 P. 845] and *Bencich* v. *Market St. Ry. Co.,* 20 Cal.App.2d 518 [67 P.2d 398], but in both of these cases the trial court denied plaintiff's motion for a new trial and the appellate court was asked to reverse the judgment and direct a new trial on the issue of damages only. Obviously, it cannot be said that in such a case the trial court has exercised a discretion but has simply held that there was no error in the record justifying the granting of a motion for a new trial. The majority opinion also states "that any doubts (in ruling on a motion for a limited new trial) should be resolved in favor of granting a complete new trial," citing *Keogh* v. *Maulding,* 52 Cal.App.2d 17 [125 P.2d 858]. But the majority opinion does not state whether such doubts should be entertained by the trial court or the appellate court. If the trial court has a discretion in passing upon a motion for a limited new trial, as the majority opinion concedes, then any doubt which may exist in the minds of an appellate court as to whether such limited new trial should have been granted, should be resolved in favor of the action of the trial court. Otherwise, it is not the discretion of the trial court which is being exercised in ruling on the motion for a limited new trial, but the discretion of the appellate court, which, under our judicial system has no power to review such a ruling of the trial court unless there is a gross, manifest and unmistakable abuse of discretion. (*Hicks* v. *Ocean Shore Railroad, Inc.,* 18 Cal.2d 773 [117 P.2d 850]; *Estate of Everts,* 163 Cal. 449 [125 P. 1059]; *Conroy* v. *Perez,* 64 Cal.App.2d 217 [148 P.2d 680]; *People ex rel. Dept. of Public Works* v. *McCullough,* 100 Cal.App.2d 101 [223 P.2d 37]; *Ona* v. *Reachi,* 105 Cal.App.2d 758 [233 P.2d 949]; *County of Los Angeles* v. *Bitter,* 103 Cal.App.2d 385 [229

P.2d 466] ; *Perry* v. *Fowler,* 102 Cal.App.2d 808 [229 P.2d 46] ; *Parks* v. *Dexter,* 100 Cal.App.2d 521 [224 P.2d 121] ; *J. Levin Co.* v. *Sherwood & Sherwood,* 55 Cal.App. 308 [203 P. 404] ; *Rigall* v. *Lewis,* 1 Cal.App.2d 737 [37 P.2d 97] ; *Spencer* v. *Nelson,* 84 Cal.App.2d 61 [190 P.2d 40] ; *Wold* v. *League of the Cross,* 107 Cal.App. 344 [290 P. 460] ; *Amore* v. *Di Resta,* 125 Cal.App. 410 [13 P.2d 986] ; *Johnstone* v. *Johnson,* 38 Cal.App.2d 700 [102 P.2d 374] ; *Adams* v. *Hildebrand,* 51 Cal.App.2d 117 [124 P.2d 80] ; *Crandall* v. *McGrath,* 51 Cal.App.2d 438 [124 P.2d 858] ; *Bauman* v. *San Francisco,* 42 Cal.App.2d 144 [108 P.2d 989] ; *Pacific Tel. & Tel. Co.* v. *Wellman,* 98 Cal.App.2d 151 [219 P.2d 506] ; *Tumelty* v. *Peerless Stages,* 96 Cal.App. 530 [274 P. 430] ; *Cox* v. *Tyrone Power Enterprises Inc.,* 49 Cal.App.2d 383 [121 P.2d 829] ; *McNear* v. *Pacific Greyhound Lines,* 63 Cal.App.2d 11 [146 P.2d 34] ; *Henslee* v. *Fox,* 25 Cal.App.2d 286 [77 P.2d 307] ; *Zeller* v. *Reid,* 26 Cal.App.2d 421 [79 P.2d 449] ; *Martin* v. *Donohue,* 30 Cal.App.2d 219 [85 P.2d 913] ; *Ohran* v. *Yolo County,* 40 Cal.App.2d 298 [104 P.2d 700] ; *Tornell* v. *Munson,* 80 Cal.App.2d 123 [181 P.2d 112] ; *Woods* v. *Eitze,* 94 Cal.App.2d 910 [212 P.2d 12] ; *Tripcevich* v. *Compton,* 25 Cal.App.2d 188 [77 P.2d 286].)

In the case of *Crandall* v. *McGrath, supra,* the court clearly and succinctly stated the basis for the rule announced in the above cited cases in the following language: "The trial judge having heard all the evidence in a personal injury action, and having been convinced, he is in a peculiar position to know that nothing could be gained by relitigating the issue of negligence though dissatisfied with the award of damages. His decision in granting a new trial on the single issue of damages is the exercise of discretion and should ordinarily be final." In the case of *Cox* v. *Tyrone Power Enterprises Inc., supra,* Mr. Justice Schauer, then a member of the District Court of Appeal, in speaking for the unanimous court in that case, took a position diametrically opposed to the position of the majority in the case at bar when he said, at page 390: "While the evidence amply supports the conclusion that the damages awarded were inadequate, we do not find that it is such as to justify us in concluding, contrary to the trial judge, that the jury compromised the question of negligence by its inadequate award of damages. *Such a conclusion on this record would be more speculative than inferential.* The verdict here was for $1,250 in response to plaintiff's claim for $450 doctors' bills, $361 hospital bill, and general damages.

The items for the doctors and the hospital were not disputed, but the extent of the injuries was seriously contested. The verdict not only awards recovery for all the special damages but includes $439 for general damages. That the general damage award is disproportionatetly small seems obvious and its inadequacy is the basis for the new trial order. *But that merely because we regarded the award as too low we must also infer that jurors stultified themselves by bargaining inadequate damages for unjustified liability is a non sequitur.*" (Emphasis added.)

The majority opinion ignores what is said to be the guiding principle in cases of this character: "The guiding principle is that, although a verdict ought not to stand which is tainted with illegality, *there ought to be but one fair trial upon any issue, and that parties ought not to be compelled to try anew a question once disposed of by a decision against which no illegality can be shown. Thus, the parties and the state have been saved the expense, annoyance, and delay of a retrial of issues once settled by a trial as to which no reversible error appears.*" (Emphasis added.) (98 A.L.R. 941.) Notwithstanding the rule announced in the above cited cases, many of which are cited in the majority opinion, the majority in the case at bar hold "that an abuse of discretion is shown when the damages are inadequate, the record discloses that the issue of liability is close, and other circumstances indicate that the verdict was probably the result of prejudice, sympathy, or compromise or that for some other reason the liability issue has not actually been determined." No authorities are cited in support of the foregoing statement, and it is clearly contrary to the rule announced in all of the above cited cases.

In a very few cases it has been held that the trial court committed an abuse of discretion in granting a motion for a new trial on the issue of damages only. (*Wallace* v. *Miller*, 26 Cal.App.2d 55 [78 P.2d 745]; *Keogh* v. *Maulding*, 52 Cal. App.2d 17 [125 P.2d 858]; *Shurman* v. *Fresno Ice Rink Inc.*, 91 Cal.App.2d 469 [205 P.2d 77]; *Crawford* v. *Alioto*, 105 Cal.App.2d 45 [233 P.2d 148].) The last cited cases are out of harmony with the rule that has been generally adopted and followed by this court and the District Courts of Appeal as appears from the long line of decisions above cited, all of which hold that to justify reversal of an order granting a new trial on the issue of damages only there must be a gross, manifest and unmistakable abuse of discretion on the part of the

trial court in granting such motion. I shall demonstrate from the record in this case that there is no justification whatever for the holding of the majority that the trial court abused its discretion in this case.

It is claimed by the majority that this is a close case on liability and the jury seemed to have some difficulty in arriving at its verdict. There are factors present which preclude that result. The question of liability was determined by the trial court to be clear rather than close and the other judgments in the case are res judicata on that issue; the only confusion on the part of the jury was with reference to the limited liability of an owner of a car under section 402 of the Vehicle Code.

There are five actions here involved which were consolidated for trial, the instant one for personal injuries and four for the deaths of five persons. The injuries and deaths were all caused by the same negligence of defendants and the verdicts are against the same defendants. Except for damages, identical issues were presented in each case. *Defendants' motion for a new trial on the ground of insufficiency of the evidence was denied.* Plaintiff, Denny Leipert's, motion for a new trial on inadequacy of the damages was granted on that issue only. In denying *defendants'* motion for a new trial on the ground of insufficiency of the evidence it must be presumed that the trial court *weighed* the evidence *on liability* and, like the jury, concluded it was ample. It is said: "The trial court may, and indeed should, grant a motion for new trial where one of the grounds of the motion therefor is insufficiency of the evidence, if it is satisfied that the verdict or decision is not supported by, or is contrary to, the weight of the evidence, although the evidence is conflicting on the point or points at issue, since, in passing upon a motion for new trial, the trial court must weigh and consider the evidence of both parties, and determine for itself the just conclusion to be drawn. . . . The same rules apply to an order denying a new trial, which will be affirmed where the evidence was substantially conflicting and there was sufficient evidence to sustain the verdict." (20 Cal.Jur. 117.) The court said in *Mosekian* v. *Ginsberg*, 122 Cal.App. 774, 777 [10 P.2d 525]: "When the question of the insufficiency of the evidence to justify the verdict is presented on a motion for a new trial, it becomes the duty of the trial judge to inquire into the question of sufficiency and to grant a new trial if in his judgment the evidence is insufficient to justify the verdict, or *to*

*deny* the motion for a new trial if in his opinion the evidence is sufficient to sustain the verdict. . . . There is a clear distinction between the duties and powers of a trial court in passing upon a motion for a new trial upon the grounds heretofore mentioned and those of an appellate court in reviewing the matter on appeal from the judgment. The appellate court is not concerned with questions of preponderance of the testimony or weight of the evidence; the only matter for its determination is whether or not there is evidence which, if given its fullest effect, is legally sufficient to support the decision. On the other hand, the trial court may weigh and consider the evidence on behalf of both parties and determine for itself the just conclusion to be drawn from it. The question of the insufficiency of the evidence to justify the verdict is addressed to the sound legal discretion of the trial court. . . . The courts of last resort of this state have repeatedly held that insufficiency of the evidence to justify a verdict is a ground for a new trial which is pecularily within the discretion of the trial court and its order either granting or *denying* a new trial will not be disturbed on appeal unless it appears that there was a manifest abuse of discretion.'' (Emphasis added.)

As the trial court's denial of the motion for a new trial, made on the ground of insufficiency of the evidence, included a weighing of the evidence, this court cannot on appeal ignore its determination. It cannot, as does the majority opinion in effect say, that the question of liability is close. By so doing, it is, in effect, weighing the evidence. It is more than a matter of discretion with the trial court. It has weighed the evidence on liability and found it adequate. Where the evidence is conflicting, this court *cannot* set aside that determination, but that is the effect of the majority decision reversing the order granting a limited new trial to plaintiff and requiring a new trial on all the issues. That result is not reached here because neither plaintiff nor defendants want a new trial on all the issues but the case stands as authority for that proposition.

It is stated in the majority opinion that a large discretion rests with the trial court in determining whether a limited new trial should be granted, but that here there was an abuse of discretion. It is difficult to understand how this court can say there is an abuse of discretion when it cannot view the case from the same standpoint as the trial court. As seen, the latter court weighed the evidence and decided

that liability had been established. This court may not weigh the evidence. Therefore, it may not say that the trial court abused its discretion—that it read the dial on the scales wrongly.

It will be recalled that no appeal was taken from the judgments in the death actions. They are, therefore, final determinations as to defendants' liability in each and all of these actions. It would be idle to send the case back for a new trial on all of the issues, including liability, because the rule of res judicata would be applied, and there would be nothing left to try except damages—the very issue embraced in the limited new trial which the trial court granted. That res judicata is pertinent to the case is clear from the principles enunciated in *Bernhard* v. *Bank of America,* 19 Cal.2d 807, 812 [122 P.2d 892], where this court said: ''There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation.

''No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend. (See 7 Bentham's Works [Bowering's ed.] 171.) Many courts have abandoned the requirement of mutuality and confined the requirement of privity to the party against whom the plea of res judicata is asserted. . . .

''In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?'' All three questions are answered in the affirmative in the instant case. The identical issue is whether defendant driver was negligent and was his negligence the proximate cause of the collision. The answer is yes in the four death actions. There are four final judgments on the merits of that issue. The party against whom the prior adjudications are asserted is the same.

It is said that the verdict was the result of a compromise because the jury wanted additional instructions on liability and had difficulty in arriving at a verdict. An examination of the record reveals that in arriving at a verdict the diffi-

culty was apparently the amount allowable against an owner under section 402 of the Vehicle Code. It is true that after the jury had been deliberating for a time they requested the reading of the testimony of a witness on liability, but *thereafter* their sole concern was the *amount* of damages and how they should be apportioned among the various plaintiffs within the $10,000 limit. They were first asked by the court how they stood numerically and they replied 9 to 3 and then told to finish their verdict by determining the ''balance of the matters presented to you.'' Verdicts were then returned but they were too large as against the owner, they being for $5,000 in each of three of the death actions and $10,000 in the fourth, or a total of $25,000. That for Denny Leipert was for $4,000, and for his father $1,000 thus increasing the total to $30,000. They were told that the verdicts were incomplete because they did not limit the owners' liability. When they were polled the indication was that the *amounts* awarded, and not liability, was the reason for diverse answers. For example, one juror said: ''We wanted to have some instruction there, but you said it wouldn't do any good, so we were *confused on the money question*.'' The court explained the $10,000 limitation and there was a discussion between the court and jurors on the subject. Later they were asked if they thought they could reach a verdict, to which negative replies were given, and then as the record discloses: ''THE COURT: The jury has been out for twelve hours, with some slight rest, and they feel they are getting farther apart rather than closer together.

''MR. JOHNSTON: If the court please, I wonder if inquiry might properly be made towards determining whether there is some question of law and its application to the law?

''THE COURT (To Jury): Well, is it some particular problem of law that bothers you?

''JUROR SHEIK: Well, I believe the most confusion arises by not asking for some more instructions about the *money matter*. *We had agreed upon the negligence* and we came to the point about the $10,000.00 which has confused us, and suggestions were made for more instructions, and they didn't want to ask for any more instructions because we didn't think they would give the instructions we wanted.'' After further discussion about the *amounts* the jury again retired. They then returned verdicts which apportioned the $10,000 as follows: $1,700 each in three of the death actions and $3,400 in the fourth; $500 to Denny and $1,000 to his father,

showing that they had finally grasped the method of procedure. Thus, I believe it is clear that the record points away from a compromise verdict much stronger than toward it. The issue of liability was settled, and *after* that, the confusion arose with respect to amounts and apportionment. In any event it is beyond this court's authority to declare that the trial court abused its discretion in accepting one of two possibilities, that is, that the verdict was not the result of a compromise on the issue of liability, for the only disagreement on the verdict related to the apportionment of the amount of damages, rather than on liability.

I would, therefore, affirm the order granting a new trial on the issue of damages only.