[Civ. No. 5002.  Fourth Dist.  Dec. 7, 1954.]

CHARLES LINN et al., Respondents, v. BENJAMIN C. ROBY, Appellant.

Head, Jacobs, Corfman & Jacobs for Appellant.

George Cohn for Respondents.

MUSSELL, J.—This action for damages arose out of an automobile collision which occurred on August 18, 1952, at about 11:30 a. m. on United States Highway 101 approximately 8 miles south of Laguna Beach.  A jury trial resulted in a verdict in favor of plaintiff Charles Linn in the amount of $1,370.91 and in favor of his wife, Readell Linn, for the sum of $2,278.31, all against the defendant Benjamin C. Roby.  Thereafter plaintiffs moved for a new trial on the issue of damages.  This motion was granted on the ground of insufficiency of the evidence to support the verdict and judgment.  Defendant Benjamin C. Roby appeals from the

order granting the limited new trial and the sole issue here is whether the trial court abused its discretion in so limiting the new trial to the issue of damages.

*Evidence*: Plaintiff Charles Linn was driving his 1947 De Soto automobile south on Highway 101, which, at and near the point where the accident occurred, is a four-lane, north and south highway and the north and south traffic lanes are separated by a four-foot, marked island in the center. Salt Creek road runs in a northeasterly direction into the highway and there is a 48-foot gap in the island to permit northbound traffic on the highway to cross it and turn left to enter Salt Creek Road. Highway 101 has a downgrade of 2⅔ per cent from the top of a hill or rise approximately 700 feet north of the break in the island and there is a clear view of cars approaching from the north for at least 700 feet to one crossing the highway through the gap. Defendant Roby was driving his Dodge pickup truck north on Highway 101 and attempting to turn left into Salt Creek Road when the collision occurred.

Linn testified that he first saw the Roby truck approximately 1,000 feet away in the inner northbound lane of the highway; that he could not estimate its speed; that it did not stop and that when the two vehicles were very close, the Roby truck made a sudden lefthand turn without a signal, directly in front of him across the divided highway, approximately 40 to 50 feet south of the crossover at Salt Creek Road; that he, Linn, was traveling approximately 45 to 50 miles per hour and immediately applied his brakes ''as hard as he could'' and turned to the right; that the front part of his car struck the right side of the truck toward the front as the truck was coming toward him and turning to the left.

A traffic officer who arrived at the scene within a few minutes after the accident happened testified that the point of impact of the two vehicles was approximately 40 feet south of the opening in the divider strip and in the southbound traffic lane; that he determined the point of impact by a skid mark leading to the point of impact and by brush marks and debris on the highway; that he found no evidence that the accident happened farther north than 40 feet south of the opening in the island; that he talked to defendant Roby who stated ''That he had come up there with the intention of making a left turn and lost control of his vehicle.''

Defendant Roby testified that he was 69 years of age; that

he was the owner of the Dodge pickup truck and that his niece, Catherine Kemp, was riding with him as they traveled north on Highway 101; that the weather was clear; that he stopped his truck at the crossover and was facing southwest while stopped; that he could see southbound traffic approximately 400 yards or more away; that there was nothing at all to stop him from seeing clearly to the north to the top of the hill; that he was stopped for approximately a minute and a half; that he gave an arm signal for a stop signal but did not make any other signal after he stopped; that two southbound cars passed while he was stopped and that after these cars passed, he saw no further southbound traffic and proceeded to make a lefthand turn; that he did not at any time see the Linn car, either before or after he put his car in motion; that he heard a screech of brakes and then stepped on the gas to go faster; that he made no attempt to stop his truck after starting his turn; that he was going at slow speed, approximately 3 miles per hour, and his truck was struck a little north of the southerly end of the crossover.

Mrs. Kemp testified that she saw the Linn car for the first time when it was between 300 and 400 feet away and estimated its speed at 70 miles per hour and that she observed the car for about a second and a half. However, on cross-examination, she testified that the Linn car was 150 to 200 feet away when she first saw it and that she did not see it until she heard the screech of the brakes and in a statement to an investigator she said her uncle had started his turn to the left and was across the double line and into the left lane of oncoming traffic about the time the car crashed into them; that just before the crash she was looking ahead and to the left at the scenery and did not see the car that hit them.

*Damages*: Plaintiff Charles Linn claimed special damages in the sum of $1,377.91, which sum included doctor bills, hospital bill, towing and damage to his car, which he stated was reasonably worth $1,300 before the accident and was sold thereafter for $250. He testified that he suffered lacerations on the forehead and bruises; that he remained in the hospital four days and was still bothered to some extent by the scar on his forehead. The jury awarded him $1,370.91. If the testimony of Eddie Martin, a used car dealer who testified for the defendant, is accepted as true, the special damages awarded Linn would amount to $1,127.91 to $1,177.91 or an award of general damages of between $193 and $243.

Mrs. Linn's undisputed special damages amounted to the sum of $1,278.81 and there was a dispute as to further dental care. If based on the testimony of one of the doctors who testified for the defendant, her special damages were between $1,653.31 and $1,713.31, leaving a balance of $565 to $625 as general damages, since the verdict returned in her favor was for the sum of $2,278.31. The evidence as to her personal injuries was that she was unconscious for 15 hours, suffered amnesia, had headaches, nausea, lacerations, and a cut on her chin, bruises, loss of lower bicuspid; that she also suffered damage to other teeth, and was confined to the hospital for a period of 10 days. She was then at home under the care of a nurse for a period of two weeks and thereafter employed a housekeeper for two months. At the time of the trial she testified that she still had trouble with her arm and suffered headaches and dizziness.

The granting of a motion for a new trial rests within the discretion of a trial court and its determination will not be disturbed by an appellate court unless a manifest and unmistakable abuse of discretion clearly appears. (*Patterson* v. *Rowe*, 113 Cal.App.2d 119, 122 [247 P.2d 949].) In the instant case it is not contended that a new trial was improperly granted on the issue of damages but appellant argues that the new trial should not be limited to that issue. We are not in accord with this argument. In *Leipert* v. *Honold*, 39 Cal.2d 462, 466-467 [247 P.2d 324, 29 A.L.R.2d 1185], it is held that the power of a trial or appellate court to order a new trial on fewer than all the issues is generally recognized; that the purpose of limited retrial is to expedite the administration of justice by avoiding costly repetition; that such retrials should be granted only if it is clear that no injustice will result; that a request for such a trial should be considered with the utmost caution; that the decision on limiting the new trial appropriately rests in the discretion of the trial judge; that it is presumed that in passing upon the motion he has weighed the evidence and the possibility of prejudice to the defendant and that his decision will not be reversed on appeal unless an abuse of discretion is shown.

In *Rose* v. *Melody Lane*, 39 Cal.2d 481, 488 [247 P.2d 335], the rule is stated that the granting of a new trial limited to the issue of damages appropriately rests in the discretion of the trial court, but an abuse of that discretion is shown when the record discloses that the issue of liability

is close, the damages are inadequate, and there are other circumstances that indicate that the verdict was probably the result of a compromise of liability. ■ We cannot here hold that the issue of liability was close under the evidence adduced. If we accept the testimony of defendant Roby as true, it is apparent therefrom that he was negligent; that he looked but did not see the Linn car, although he had a clear view to the north for several hundred feet and that he turned in front of plaintiffs' car. His testimony that the point of impact was in the break of the center island is not borne out by the physical evidence, which was that the impact occurred 40 to 50 feet south of the break, corroborating the testimony of plaintiff Linn that Roby cut across the center island directly into his path.

The record shows that after deliberating about six hours, the jury returned into court for further instructions on the question of contributory negligence and after the court had again instructed it as to the law applicable, a verdict was reached. Apparently the jury did not have any difficulty with the question of the negligence of the defendant and it can be reasonably said that the question of contributory negligence was determined by it. As was said in *Hamasaki* v. *Flotho*, 39 Cal.2d 602, 606 [248 P.2d 910]: "A new trial limited to the damages issue may be ordered by the trial court when it can reasonably be said that the liability issue has been determined by the jury." It does not here appear from the record that there were circumstances indicating that the verdict was probably the result of a compromise of the liability issue.

Order affirmed.

Barnard, P. J., and Griffin, J., concurred.