[Civ. No. 5842.   Fourth Dist.   July 31, 1958.]

GEORGE H. STUART, Appellant, v. LEO MATRANGA, Respondent.

Curran & Golden and Robert O. Curran for Appellant.

McInnis, Focht & Fitzgerald and James L. Focht, Jr., for Respondent.

McCABE, J. pro tem.*—Plaintiff, a member of the military forces, was injured when the motorcycle he was operating and defendant's automobile were involved in an accident at about 9:30 p. m. on April 3, 1956, at the intersection of El Cajon Boulevard and 60th Street. Plaintiff was traveling west on El Cajon Boulevard and defendant was approaching 60th Street from the west. In approaching this intersection from the west there existed strips of raised concrete, referred to as "hatchers," which divided the northerly portion of El Cajon Boulevard from the southerly portion.

Plaintiff testified there were other vehicles also traveling in a westerly direction, and that he saw defendant's car only momentarily before he hit it. Defendant testified that he was turning onto 60th Street and had given a signal to turn to the left, both by mechanical and manual process, and that his car was either moving very slowly or had stopped at the time of the impact. Plaintiff testified that defendant's vehicle was traveling slowly. Plaintiff's motorcycle hit the right front fender and headlight of defendant's car.

As a result of this accident plaintiff suffered compound and comminuted fractures of his right leg, both above and below his knee. He was taken to the Navy hospital, operated upon, and had metal screws affixed to the bone below his knee. He was put in traction and later a cast was applied to his body. The most complicated and severe fracture was below the knee which extended into the knee area. A sliding bone graft operation was performed on his leg below the knee. At the time of trial there was a conflict in the medical testimony as to whether or not there was any union of the bones at the point where the sliding bone graft operation was performed. Plaintiff was in and out of hospitals from the date of the accident to the date of trial. A short time before the trial date a brace was applied to plaintiff's leg and he was able to walk on crutches.

There is a definite and sharp conflict in the evidence given by the doctors for plaintiff and defendant as to the prognosis. Plaintiff's medical evidence is that he will have a stiff knee without flexibility, an operation will have to be performed

---

*Assigned by Chairman of Judicial Council.

on his leg below the knee in order to obtain proper union of the bones, there will be permanent disability, all of which will prevent plaintiff from continuing to operate heavy equipment as he did before and during his military service. Defendant's medical evidence is that there is a partial union of the bones and there may have to be an operation to aid the union; that there is a limitation of motion in the knee but, in part, this will be overcome in time by use; that there will not be a stiff knee; and that plaintiff will be able to operate heavy equipment. Defendant's doctor testified that in view of plaintiff's youth (24 years of age at the time of the trial), and the fracture in the bone between the hip and the knee had healed, there was a medical reason to believe that union of the bones below the knee could be obtained. Apparently all doctors agreed at the trial that the right leg was shorter than the left, and this condition would continue to exist.

A few weeks after the accident and while plaintiff was in a Navy hospital he was honorably discharged from military service and transferred to a veteran's hospital. There was no evidence before the jury as to any special damages. There was some evidence of the wages heavy equipment operators received.

Upon the case being submitted to it, the jury returned a verdict in plaintiff's favor for $40,000. Defendant made a motion for a new trial upon all statutory grounds. The trial court granted the motion for new trial on the grounds: (1) irregularity in the proceedings of the adverse parties preventing defendant from having a fair trial; and (2) excessive damages appearing to have been given under the influence of passion and prejudice. From this order granting a new trial plaintiff has appealed.

Plaintiff's principal contention on this appeal is the trial judge's "erroneous conception of applicable legal principles," citing *Estate of Baird*, 198 Cal. 490 [246 P. 324]; *Conner* v. *Southern Pac. Co.*, 38 Cal.2d 633 [241 P.2d 535].

We agree with the principle of law which is set forth in these cases, however, they have no application to the instant case. It has been noted herein that one of the grounds upon which the new trial was granted was excessive damages. To this point we will direct our attention.

The granting or refusing to grant a motion for new trial is largely within the discretion of the trial court. (*Pirrone* v. *Nuccio*, 78 Cal.App.2d 864, 868 [179 P.2d 18]; *Parks* v. *Dexter*, 100 Cal.App.2d 521, 527 [224 P.2d 121].)

█ The trial judge had the opportunity to see the witnesses, hear them testify, and therefore had an advantage over the justices of this court. Any abuse of his discretion must clearly appear before we can interfere. ''It is especially so when such discretion is used in awarding a new trial which does not finally dispose of the matter.'' (*Sherwood* v. *Kyle,* 125 Cal. 652, 655 [58 P. 270].) █ In discussing the granting of a new trial on the ground of excessive damages the appellate court in *Parks* v. *Dexter, supra,* said at page 526:

''The order granting the new trial must be affirmed if it is sufficient on this ground alone. It was within the province of the trial court to pass upon the sufficiency of the evidence to sustain the verdict for damages allowed and this court may not reverse the order unless it clearly appears that the trial court abused its discretion. (*Leaper* v. *Gandy,* 22 Cal.App.2d 475, 478 [71 P.2d 303]; *Pitt* v. *Southern Pac. Co.,* 121 Cal. App. 228, 239 [9 P.2d 273]; *Gray* v. *Robinson, supra,* 181.) In view of the conflict in the evidence as to the extent of the injuries received by plaintiff and the amount awarded therefor by the jury, we cannot say that an abuse of discretion was shown in granting a new trial on this ground.''

█ Plaintiff has cited several cases wherein plaintiff contends the facts or injuries were similar and the awards of damages were sustained on appeal. Apparently plaintiff contends that these cases are binding upon the trial court. In this assertion plaintiff is incorrect. The question of amount of damages is primarily factual and is, therefore, not to be decided upon the basis of awards made in other cases. (*Crane* v. *Smith,* 23 Cal.2d 288, 302 [144 P.2d 356]; *Leming* v. *Oilfields Trucking Co.,* 44 Cal.2d 343, 356 [282 P.2d 23, 51 A.L.R. 2d 107].)

█ There is substantial evidence to support the finding of the trial court that the award of damages was excessive. Therefore, we cannot say as a matter of law that the award is not excessive.

Since we are sustaining the trial court's action in granting a new trial, it is not necessary to consider plaintiff's other contention that the jurors were not biased or prejudiced by the questions asked them concerning insurance. The trial court stated the issue on liability was a close one and concluded that by the questions propounded by plaintiff's counsel to the jurors on *voir dire* examination there was conveyed to them the impression there was an insurance company ''mixed up in the case,'' and this may have had some bearing on the jury's

determination of liability and on the size of the verdict. Several cases have set forth certain guides on this question which may be of assistance to the trial court on the new trial.

In *Arnold* v. *California Portland C. Co.*, 41 Cal.App. 420 [183 P. 171], the following questions were propounded to prospective jurors:

" 'Now, if you were sworn as a juror, and during the trial of this case, near the end of it, you should learn that the New Amsterdam Casualty Company, one of these surety companies, was a surety at the time of this accident alleged, or an insurer against any injury to employees, would that in any wise affect your verdict in this case?' Also: 'And if it came to your knowledge, if you were a juror in this case, and it came to your knowledge from any source whatever, that the New Amsterdam Casualty Company was a surety for any injury to the employees of the defendant company at the time of this alleged injury, would that knowledge of that fact in any wise influence your verdict in the case?' Each of these questions carried with it the implication, if not the direct assertion, that appellant was insured by a casualty insurance company against any financial loss it might sustain by reason of the injury to respondent. . . . The questions were highly prejudicial, and it was error to overrule respondent's objections. . . .

"It is extremely difficult, if not impossible, to lay down a fixed rule that will apply on all occasions and define the restrictive limitations with absolute exactness. It is, however, possible and practicable to define the guiding principles applicable to such cases. Courts do not look with favor upon an attempt to impress the jury with the idea that, not the local defendant in the case, but an insurance company, which often ·is a foreign corporation, may be called upon to respond to such damages as the jury may assess. The knowledge that the defendant has such protection may have a tendency to make the jurors careless as to the amount of their verdict. . . .

"It is entirely proper for counsel to ask the jurors such questions as may reasonably be necessary to ascertain whether they are free from a bias or interest that may affect their verdict. To this end it is proper for counsel, in good faith, to ask each juror whether he is interested as an agent or stockholder or otherwise in a specified casualty company. Or he may be asked the broad question whether he is interested in any insurance company insuring against liability for negli-

gence. (*Rinklin* v. *Acker*, 125 App.Div. 244 [109 N.Y.Supp. 125] ; *Grant* v. *National etc. Co.*, 100 App.Div. 234 [91 N.Y. Supp. 805].) But counsel must take pains to propound such questions in such a manner as not unnecessarily to convey the impression that the defendant is in fact so insured. It is misconduct on the part of counsel for plaintiff in such actions so to frame his question that it goes beyond what is reasonably necessary to serve the legitimate purpose of eliciting the facts he is entitled to adduce in order to secure a jury free from bias or prejudice, if it is also apparent that the question may fairly be said to have the effect of serving the illegitimate purpose of prejudicing the jury by fixing in their minds the idea that the defendant is protected by insurance against liability for negligence.'' See also *Gladstone* v. *Fortier*, 22 Cal.App.2d 1, 6 [70 P.2d 255] and cases therein cited; *Elford* v. *Hiltabrand*, 63 Cal.App.2d 65, 70 [146 P.2d 510].

Order affirmed.

Griffin, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied August 11, 1958, and appellant's petition for a hearing by the Supreme Court was denied September 24, 1958.