[Civ. No. 21109. Second Dist., Div. Three. Feb. 9, 1956.]

VIRGINIA THOMPSON et al., Appellants, v. BLUM'S INC., (a Corporation), Respondent.

Martin S. Ryan and Toxey H. Smith for Appellants.

Spray, Gould & Bowers and Frank J. Breslin, Jr., for Respondent.

WOOD (Parker), J.—Action by husband and wife for damages for personal injuries received by the wife when she slipped and fell on the floor of defendant Blum's store. Judgment, pursuant to verdict, was against defendant Blum's for $55,000 in favor of the wife and for $500 in favor of the husband; and was in favor of defendant American Building Maintenance Company. Defendant Blum's motion for a new trial, made upon all the grounds stated in section 657 of the Code of Civil Procedure, was granted on all the issues on the ground that the evidence was insufficient to justify the verdict. Plaintiffs appeal from the order granting defendant Blum's motion for a new trial.

On October 20, 1951, about 4 p. m., plaintiff Mrs. Thompson entered Blum's candy, ice cream, and pastry store for the purpose of buying an ice cream soda at the soda counter. When she was at a place in the store about 15 feet from the entrance and about 5 feet from the counter she slipped and fell upon the floor. As a result of the fall her right hip—the neck of the femur—was fractured. The floor was asphalt tile upon concrete. Mrs. Thompson testified that while she was sitting or lying on the floor and trying to raise herself, during a period of four or five minutes after she had fallen, she felt the floor with her hand, and the floor was uneven, waxed, highly polished and slippery; the unevenness at the place where she fell consisted of several rises which were round and larger than a half dollar; as she slipped there was a sensation of falling on ice—her foot hit a lump that was slippery like ice; the manager of the store, who picked her up and carried her to a nearby davenport, told her that several people had fallen on the floor; she was wearing "platform sole" shoes with high heels.

Mrs. Thompson was taken by ambulance to a hospital where an operation (open reduction) was performed on her hip, and a nail was driven through the neck of the femur, across the fracture line, and into the head of the femur. She was in the hospital two weeks; in a rest home two weeks; in bed at home three weeks; in a wheel chair three months; used crutches about two months; and used a cane about two months. Her right leg is a half inch shorter than it was before the accident. She remained away from her employment, as a milliner, until June, 1952, a period of approximately eight months. Her salary was $130 a week. (The salary was paid to her during the first five months that she was away.) After returning

to work, she worked part time for seven months. She was discharged from her employment in August, 1954, because she was highly nervous and her work was not satisfactory. She has not been employed since that time. She was 54 years of age when the accident occurred.

Mr. Goldstone, a witness (by deposition) on behalf of plaintiffs, testified that he was manager and vice-president of Blum's at the time of the accident; he saw Mrs. Thompson enter the store and he saw her when she slipped and fell; he "helped her onto a divan" which was in the vestibule; the floor is asphalt tile on a concrete slab; the tile was waxed approximately once a week, and was mopped with water and soap two or three times a week; there were irregularities in the surface of the floor—the slab (under the tile) was not a true flat surface but there were knobs or round spots in the slab; the irregularities were round humps on the flooring (tile) with curved edges—the deviation from the lowest to the highest spot might be from three-eighths to one-half inch, with an approximate diameter of two to four feet; there were irregularities in the area in which Mrs. Thompson fell, and the condition as to irregularities was more or less general throughout the establishment; there was no foreign substance on the floor or on her shoes; on the day of the accident approximately 500 persons had been in the store; during the time he had been manager (about one and one-half years), and prior to the accident herein, there were two or three occasions when persons had slipped and fallen on the floor; he has not been associated with Blum's since February, 1952; he is now residing in Denver.

Mr. Thompson testified that he went to Blum's on the third day after the accident; the manager, Mr. Goldstone, showed him the place on the floor where Mrs. Thompson fell; the floor was glossy, slippery looking, and there was a rise in the floor by the partition; the manager said that others had fallen there; there are little swells and rims on the floor; he (witness) felt the lumps by sliding his feet on the floor.

Mr. Silverstein, a witness on behalf of plaintiffs, testified that at the time of the accident he was a salesman for the millinery company where Mrs. Thompson was an employee; in response to a telephone call he went to Blum's about an hour and a half after the accident and assisted in obtaining a physician for Mrs. Thompson; he (witness) examined the floor at the place where the manager, Mr. Goldstone, said she

had fallen; the place, which was about three feet from the soda fountain, was uneven; the manager said that they had had trouble there before.

Mr. Rowland, a witness on behalf of plaintiffs, testified that he was an employee of defendant American Building Maintenance Company (which had a contract with Blum's for cleaning and maintaining the floor); for approximately three months before the accident, he did the cleaning and maintaining of the floor; he swept and mopped the floor six nights each week; every other night he waxed the floor, and polished it with a machine; once a month he stripped or removed the wax from the floor, and then rewaxed and polished it; he started his work at midnight; he waxed the floor the morning before the accident; the floor was uneven at the archway (the area where plaintiff fell).

An architect, called as a witness by plaintiffs, testified that the life of asphalt tile is less than the life of rubber tile; that asphalt tile, under heavy traffic, will last six or seven or eight years. The architect, who was also called as a witness by defendant Maintenance Company, testified further that he had been measuring friction resistance of surfaces for approximately 10 years; there is a coefficient of friction that is the accepted standard of the architectural profession for public floors; the minimum safety coefficient of friction is .320; if a surface measures that coefficient or higher it would conform to the accepted standard of the architectural profession for public use; on November 15, 1951, he made a series of tests of an area of Blum's floor (area where Mrs. Thompson fell); one of the tests was made just after Mr. Rowland had waxed the floor and buffed it with an electrical rotary buffer; the coefficient of friction shown by that test was .368; in all of those tests he found that the friction resistance conformed to the accepted standard in this community for floors "having retail use."

Mrs. Moore, a witness on behalf of Blum's, testified that she had been a waitress at Blum's since 1950 and that she was there on the day of the accident; she did not see Mrs. Thompson fall; since the day of the accident the floor surface has not been changed in any way; insofar as she could observe the floor is now in the same condition it was in when the accident occurred.

The jury and judge, accompanied by the attorneys and attaches of the court, viewed the area of the floor where Mrs.

Thompson fell. Pursuant to direction of the judge, none of the viewers walked upon that area.

As above stated, the motion for a new trial was granted on all the issues on the ground of insufficiency of the evidence. "In passing upon a motion for a new trial based upon the insufficiency of the evidence, it is the exclusive province of the trial court to judge the credibility of the witnesses, determine the probative force of testimony, and weigh the evidence." (*Brooks* v. *Metropolitan Life Ins. Co.*, 27 Cal.2d 305, 307 [163 P.2d 689].) The granting of a motion for a new trial based upon insufficiency of the evidence "rests within the discretion of the trial judge to such an extent that an appellate court will not interfere unless an abuse of discretion clearly appears." (*Gilbert* v. *Yellow Cab Co.*, 123 Cal.App.2d 782, 785 [267 P.2d 392].) " 'Even in those cases where there may not appear to be a conflict in the evidence, and where all the proofs seem to be favorable to one or the other parties litigant, the question as to the probative force, or evidentiary value of the testimony, is one the determination of which is with the trial court in a proceeding on a motion for a new trial, where . . . one of the grounds is the insufficiency of the evidence . . ..' " (*Parks* v. *Dexter*, 100 Cal. App.2d 521, 523 [224 P.2d 121].) In the present case, at the time of the hearing of the motion for a new trial, one of the attorneys for plaintiffs argued there was no question but that there was unevenness of the floor. Thereupon the trial judge said: "There is a big question about it in the Court's mind because I stood within three feet, I saw women and children walk over it. I absolutely looked at it at different angles. I couldn't see any irregularity, defect in it at all." The judge also said: "I looked very, very carefully." In ruling upon the motion, the judge said: " [I]n this case the Court, having viewed the premises himself and stood within three feet of the place where the plaintiff is supposed to have fallen, being unable to see any defective condition or dangerous condition in the floor, I am going to have to grant the motion on the grounds the evidence is insufficient to justify the verdict of the jury. Motion granted." Appellant argues, however, that at the time the judge saw the floor in November, 1954, which was more than three years after the accident, the condition of the floor was not the same as it was when the accident occurred; that over that long period of time the surface of the asphalt tile would necessarily be changed by the heavy traffic thereon; that the 11 jurors who returned the

verdict in favor of plaintiffs were as capable as the judge in the matter of observing the floor; that, in view of the testimony at the trial, the casual view of the floor by the judge, more than three years after the accident, was not an adequate reason for granting a new trial; and that the judge abused his discretion. It is to be assumed that the judge considered the probative force and evidentiary value of all the testimony—that he gave due consideration to the testimony regarding the life of asphalt tile and to the effect that lapse of time and use of the floor would have upon the surface. ▮ ''[A]ll presumptions favor the order [granting new trial] as against the verdict [Citations.] and the order will be affirmed if it may be sustained on any ground.'' (*Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165, 169 [153 P.2d 338].) ▮ Although the judge, at the time he orally granted the motion, referred only to his observation of the floor, it is to be noted that his written order granting the motion stated that he granted the motion on all the issues on the ground of insufficiency of the evidence. It therefore appears that the motion was granted not only on the issue as to the condition of the floor, but also on the issue as to amount of damages. Since it does not appear that the court abused its discretion with reference to the issue as to the condition of the floor, it is not necessary to discuss the issue as to excessive damages.

The order granting the motion for a new trial is affirmed.

Shinn, P. J., and Nourse (Paul), pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.