[Civ. No. 23623. Second Dist., Div. One. Oct. 9, 1959.]

FRANK BUTLER, Appellant, v. PROGRESSIVE TRANS-
PORTATION COMPANY (a Corporation), Respondent.

Harney, Drummond & Dorsey and David M. Harney for Appellant.

Hagenbaugh, Murphy & Meifert, Sigurd E. Murphy and Henry F. Walker for Respondent.

FOURT, Acting P. J.—This is an appeal from an order granting the defendant's motion for a new trial and from an order denying plaintiff's motion to vacate the order granting the defendant's motion for a new trial.

In a jury trial the plaintiff recovered a verdict and judgment against the defendant for the sum of $77,500 because of certain personal injuries allegedly brought about by the defendant's negligence. The court granted a motion for a new trial. There is some confusion in the record as to what the grounds were upon which the motion was granted, however it is certain that one of the grounds was the insufficiency of the evidence to sustain the verdict.

In approaching this matter it is well to remember that in passing upon a motion for a new trial, where insufficiency of the evidence to sustain the verdict is the basic reason for granting the motion, it is the province of the trial judge to determine the credibility of the witnesses, and to determine the probative force and weight of the evidence. (See *De-*

*Mirjian* v. *Ideal Heating Corp.*, 150 Cal.App.2d 540, 544 [310 P.2d 488] ; *Brooks* v. *Metropolitan Life Ins. Co.*, 27 Cal.2d 305, 307 [163 P.2d 689].) ■ The trial judge is not bound by the inferences which the jury may have drawn from the evidence. (*Ballard* v. *Pacific Greyhound Lines*, 28 Cal.2d 357, 359 [170 P.2d 465].) ■ ''Upon an appeal from an order granting a new trial, all presumptions favor the order as against the verdict.'' (*Mazzotta* v. *Los Angeles Railway Corp.*, 25 Cal.2d 165, 169 [153 P.2d 338].) ■ ''The granting of a motion for a new trial based upon insufficiency of the evidence 'rests within the discretion of the trial judge to such an extent that an appellate court will not interfere unless an abuse of discretion clearly appears.' '' (*Thompson* v. *Blum's Inc.*, 139 Cal.App.2d 140, 144 [293 P.2d 82].)

The defendant in this case was engaged to transport two steel beams or girders about 84 feet in length from the plant of Bethlehem Steel Company in Torrance to the job site of the American Blast Company in Hollydale. At all of the times in question in this case the plaintiff was employed by the Bethlehem Steel Company.

In the industry involved in this matter it is generally understood that a stretch dolly is a piece of equipment which can be attached to a truck-tractor and used to transport such items as steel girders or long pieces of oil field equipment. On top of the rear wheel assembly of the dolly there is located a bolster upon which one end of the load is placed. There is a pole or pipe which extends from the rear wheel assembly towards the front. The other end of the load is placed upon a bolster which is located upon a ''fifth wheel'' which in turn is located at the rear and on top of the frame of the truck-tractor unit. There is a pole or pipe which extends from immediately beneath the front bolster towards the rear. The two poles or pipes (from the front to the rear and rear to front) usually telescope, thereby permitting the dolly to be shortened or lengthened to accommodate the load being transported. ·

At the time of the accident no one in the trucking industry had dolly equipment which would, without alteration, accommodate an 84-foot steel girder. If such loads were to be hauled it was necessary to split or separate the front and rear assemblies of the dolly. Such dollies were customarily used in heavy industry.

On April 4, 1956, the defendant's truck driver, a Mr.

Russell, was instructed to get a pole dolly and go to the Bethlehem Steel plant in Torrance to pick up the load of two 84-foot steel girders. The dolly which he had was known as a 35-foot one which could be extended to 65 feet without splitting or separating the poles or pipe. To carry the 84-foot girders it was necessary to separate the poles about 4 feet. At the Bethlehem plant, an employee from that company assisted Mr. Russell in separating the poles. Russell worked with the Bethlehem loading crew in disconnecting the hosing and electrical connections and in arranging the various parts and assemblies of the dolly to the end that the girders could be loaded. The girders were placed on the bolsters of the dolly and truck-tractor and secured by means of chains. The end of each of the poles was secured to the girders by tightened chains. The front end of the girders was about 12 inches from the cab of the truck-tractor and as a result about eight or nine feet of the girders were forward from the front bolster and there was about an 18-foot overhang of the girders from the rear bolsters.

On April 5, 1956, Russell drove to Hollydale where he met the Bethlehem superintendent on the job, who in turn directed him in the placement of the truck equipment and the load preparatory to unloading the girders. The superintendent testified that the load was secured in accordance with standard practice so far as he was able to observe.

All of the persons connected with the unloading of the girders, with the exception of Russell, were Bethlehem employees. Russell was to perform no part of the work, except to stand by the cab and to move the truck or to do as directed by the Bethlehem employee in charge of the unloading.

The superintendent for Bethlehem instructed Russell to remove the chains and binders. While Russell was unhooking the chains a Bethlehem employee secured a piece of wood about 4 feet long and 4 inches by 6 inches in width. The superintendent of Bethlehem, assisted by Russell, placed the piece of wood under the pole or pipe (apparently, the pipe connected to the front bolster). After the chains were all removed, Russell went to the side of the truck cab and stood there.

Two cranes were used in unloading; one at each end of the girders. No move was to be made unless it could be done in complete safety and apparently everything was in the hands of Bethlehem employees.

The plaintiff was near the dolly, someplace between the two cranes. One theory of how the accident occurred was that after one of the girders had been removed, the operator of the crane located at the end closest to the rear caused the rear end of the girder to be lifted which in turn brought about a turning of the front bolster above the fifth wheel and caused the pole, which was then disconnected, to swing and hit the plaintiff. There was testimony to the effect that the plaintiff did not investigate in the instance as to the safety of the split dolly pole resting on the piece of wood.

At the time of the accident the plaintiff was in charge of the Bethlehem employees and the activities surrounding the unloading of the girder. What was done was accomplished under the direction and control of the plaintiff. The plaintiff gave the signal to the rear crane operator to start lifting the girder without checking to find whether the cable which was being used to lift the rear end of the girder was vertical to the girder.

As heretofore indicated there is some confusion in the record as to what grounds were listed as being the basis for the order granting the motion for a new trial. We have determined that it was proper in any event to grant the motion upon the basis of insufficiency of the evidence to sustain the verdict and therefore it is unnecessary to discuss the question as to whether the motion was properly granted for the other reasons listed in the proceedings.

The burden was upon the plaintiff to establish by a preponderance of the evidence all of the essential allegations of his complaint. The evidence was conflicting and it cannot be said that the plaintiff as a matter of law established all of the elements of his case and that there was no substantial evidence to support a contrary judgment. Further, it was a question of fact whether the plaintiff was guilty of contributory negligence under the circumstances. The trial court under the motion was required to consider the testimony, the interests of the respective witnesses and the conflicts in the evidence, of which there were many.

There was evidence for what it was worth to the effect that the defendant complied with the customs in the industry and that it was not guilty of negligence in any respect. There was also evidence that the plaintiff saw that the dolly poles were separated or that he could have seen such had he looked. There was also evidence to the effect that the plaintiff could

have seen that the cable which was being used to lift the rear end of the girder was not plumb or vertical and that consequently the girder would drift or shift.

Appellant insists that a trial court is duty bound, upon request being made, to make written findings of fact and conclusions of law if and when a court grants a motion for a new trial. The trial court at the time the request was made for findings said in refusing, among other things, the following:

" 'When a Court rules upon a motion for new trial and makes an order granting a new trial the Court does not pass upon the merits of the claim. The Court does not say that plaintiff does not have a good claim, nor does the Court say that the defendant has a good defense. In other words, the judgment is not on the merits. The action is put back in the same position it was when it first came to issue and before it was set for trial.

" '. . . [I]n effect, to follow the plaintiff's contention here, if the Court did make findings, it would in effect be making a judgment on the merits of the case.

" 'This is not the same as on a motion for nonsuit or directed verdict or judgment notwithstanding the verdict . . . which [when granted] is in bar of further prosecution of the action.

" 'On a motion for a new trial, though, the Court does not take that absolute position. The Court searches the record and after hearing counsels' argument on the motion for new trial, . . . the Court then decides whether there is sufficient evidence in its mind to support the verdict that the jury did render.

" 'I am not passing upon what some other jury may have done in the past or what some other jury or trier of fact may do in the future on this case. If I decide it on the merits by making findings of fact and coming to a conclusion that the defense was completely good here and plaintiff should not be permitted to try the case further, then that would be one thing, but I haven't done that and I don't think the law requires that on a motion for new trial, no matter what ground it is made on, that the Court shall make findings of fact and conclusions of law.

" '     .     .     .     .     .     .     .     .     .     .     .

" 'Now, I respectfully listened to your argument on the motion for a new trial I heard both sides of it . . . I am not going to here review the motion for a new trial at all but

determine whether or not I should have filed findings of fact and conclusions of law.

" 'I hold that there is nothing in the law requiring the Court to do it and for the Court, to attempt to do it would be, in effect, doing that which you don't want the Court to do, to attempt to render a judgment on the merits.

" ' . . . . . . . . . . ' "

██ It was said in *Hack* v. *Gridley*, 54 Cal.App.2d 227, 229 [128 P.2d 827], as follows:

"Section 657 of the Code of Civil Procedure *does not require the trial court, in granting a new trial upon the insufficiency of the evidence, to specify wherein it considers the evidence insufficient as contended for by appellant,* but does require the trial court when a new trial is granted on the insufficiency of the evidence to sustain the verdict, to specify in the order that the new trial is granted on the ground of insufficiency of the evidence to justify the verdict." (Emphasis added.)

██ In our opinion, under the circumstances of this case, the court was not required to make findings. (See *Perez* v. *Perez*, 111 Cal. App.2d 827 [245 P.2d 344] ; *Parker* v. *Parker*, 107 Cal.App.2d 215, 217 [236 P.2d 828] ; *Waymire* v. *California Trona Co.*, 176 Cal. 395, 399-400 [168 P. 563] ; *Beckett* v. *Kaynar Manufacturing Co.*, 49 Cal.2d 695, 699 [321 P.2d 749].)

The order granting the new trial is affirmed.

The appeal from the order denying the motion to vacate and set aside the order granting the motion for a new trial is dismissed.

Lillie, J., and Shea, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.